## McKinley v. The C., R. I. & P. R. Co.

1. **Railroads:** PRIVATE CROSSING: RIGHT TO FENCE. Railroad companies had the right under the Revision (section 1329) to construct fences at private crossings, providing the same with suitable gates, and were liable for injuries to stock resulting from the neglect to construct or maintain proper fences and gates.

2. ———: NOTICE: PRACTICE. In an action to recover double damages for the killing of stock, the objection that the petition fails to set out the notice served upon the company should have been raised by demurrer, and, not having been thus raised, it must be regarded as waived.

3. ———: ———: EVIDENCE. When the notice introduced had indorsed upon it a sworn return of service, the introduction of oral testimony to establish the service of the notice was error without prejudice.

4. ———: FENCE: PRACTICE. Where the action was based upon the neglect of the company to maintain a proper gate at a private crossing, the reading to the jury by counsel of section 1507 of the Code, prescribing what constitutes a lawful fence, was not relevant to the issue and wrought no prejudice to defendant.

*Appeal from Iowa District Court.*

FRIDAY, OCTOBER 19.

ACTION to recover double the value of one horse and five colts alleged to have been killed by a train at a place upon the defendant's road where defendant had the right to fence but it was not fenced. There was a judgment upon a verdict, from which defendant appeals.

*Cook & Richman,* for appellant.

*Cornell Bros.,* for appellee.

BECK, J.—I. The evidence tended to prove that the horse and colts injured by the defendant's train went upon the railroad from plaintiff's inclosure through a gate in a fence constructed by defendant, at a private crossing, and that the gate was defectively constructed and not sufficient to prevent the escape of the animals.

1. RAILROADS: private crossing: right to fence.

Under the statute (Code, section 1289) railroad corporations

are liable to the owners of stock injured upon their roads at points where they have the right to construct fences and fail to do so. Double damages may be recovered by action upon failure of a company to render compensation after notice given of the injury. The place at which the animals of plaintiff were injured was a private crossing, and not the crossing of the railroad by a highway. Counsel insists that at such crossing defendant has no right to construct a fence. Upon an instruction the court below held otherwise, and this ruling constitutes the first assignment of error argued by defendant's counsel. We are required to determine the question thus presented.

The statute in force when plaintiff's cause of action accrued provides that "when any person owns land on both sides of any railroad, the corporation owning such railroad shall, when required so to do, make and keep in good repair one cause-way, or other adequate means of crossing the same." Rev., § 1329. Was a railroad company authorized to maintain a fence with a gate at a crossing provided for by this statute?

These private crossings are in the nature of private ways; gates are not inconsistent with their use, and the interest of all concerned requires that they be maintained. Gates are not required or permitted at the crossing of highways, because the convenience of the public forbids their use; at such crossings railroad corporations have no right to fence. They have a right to fence at private crossings because it is not in conflict with the convenience of the public, or the rights of the land owner, and the safety of the property of the adjoining proprietors and of the corporations themselves demand it. We conclude, therefore, that railroad corporations had a right to construct fences at private crossings under the statutes existing when plaintiff's cause of action accrued. But the fence at the crossing must be constructed with a gate, for without it the road would not be practically fenced if an opening be left for the crossing. The fence with such openings without a gate would not protect stock and trains of the road, but increase danger to each. But the law, as we have seen, authorizes the railroad companies to fence at a private crossing. This can be done in no other way than by the construction of gates.

II. The petition referred to the written notice required in such cases by Code, § 1289, as "an attached exhibit," but it was not in fact so attached. Upon the trial ·the introduction of the notice in evidence was resisted on the ground that it was not attached to the petition. The objection was overruled by the court below, and this· action is complained of now. The objection should have been raised by demurrer. Code § 2648. Not being so presented, it is regarded as waived.

2. ——: notice: practice.

III. The notice introduced in evidence had indorsed upon it a sworn return of its service. Oral testimony was introduced to establish the service. It was objected to, and is now the subject of complaint by defendant. If it be admitted that the oral testimony was improperly admitted no prejudice resulted, for the return on the notice, which defendant insists was alone competent, was introduced in evidence with the notice. All that can be said is, with competent evidence fully establishing the service, incompetent evidence was also admitted.

3. ——: ——: evidence.

IV. During the argument of the case the counsel of plaintiff read to the jury Code § 1507, prescribing a lawful fence. This was at the time the subject of an objection which· is renewed in this court. It is insisted this section, by the express terms of § 1289, is not applicable to railroad fences. We understand that the issue before the jury involved the sufficiency of the fence, including the gate erected by defendant. The last named section provides that "no law of this State, nor any local or police regulation of any county, township, city or town, regulating the restraint of domestic animals, or in relation to the fences· of farmers or land owners, shall be applicable to railway tracks unless· so specifically stated in the law or regulation." There was no controversy between the parties concerning the sufficiency of the materials of which the fence and gate were constructed, or of their height and capacity to turn stock. The only point of dispute involved the sufficiency of the fastenings of the gate, plaintiff claiming that the wind would blow it open, or that it could be opened by stock rubbing· against it. If the fastenings of the

4. ——: fence: practice.

gate had been sufficient, plaintiff conceded the horses could not have escaped from the inclosure. This point of controversy was explained to the jury by instructions. Now we may concede that the provision of the statute read to the jury by plaintiff's counsel was not applicable to the case (the point, however, we do not decide), yet no prejudice resulted therefrom to defendant. The statute provides for the material, height and construction of fences; in these particulars plaintiff admitted the fence and gate were sufficient. The statute prescribes nothing in regard to the fastenings of gates; defendant's liability was charged on the ground of insufficient fastenings. The statute read to the jury had nothing to do with the case, and its reading had been better omitted; it, however, could have had no influence upon the jury, and does not constitute an error for which we will reverse the judgment.

V. It is argued that the verdict is in conflict with the evidence; that the fact of the gate being opened by the wind or by the horses was mere theory or supposition, and was not established by the evidence. Testimony was introduced tending to show that the gate could be, and had been, opened in that way. This evidence was introduced, with other testimony, to show the insufficiency of the fastenings of the gate. The gate was found open after the horses were killed. The jury were required to determine whether the gate was sufficient. They considered the testimony before them in regard to its fastenings. Independent of the evidence just stated, other facts, as the manner of the construction of the fastenings, etc., were in evidence. If the structure of the fastenings appeared insufficient, and in addition thereto it was shown that the wind had blown the gate open, and horses had opened it, the jury were authorized to conclude that the fastenings were insufficient. The issue determined by the jury involved not the manner in which the gate was opened, but the sufficiency of its fastenings. In our opinion they were authorized to find them insufficient. The law will regard insufficient fastenings as no fastenings; a gate without fastenings, as no gate, and a fence with a gateway and without a gate, as no fence. A find-

ing of the insufficiency of the fastenings authorized the verdict for plaintiff.

The foregoing discussion disposes of all questions discussed by defendant's counsel; others must be regarded as waived.

AFFIRMED.