## BOTHWELL v. C., M. & ST. P. R. Co.

1. **Railroads:** KILLING STOCK: INSUFFICIENT EVIDENCE. In an action for damages for two colts killed by a passing train, at the close of the introduction of plaintiff's testimony, the court, on motion of defendant, directed the jury to return a verdict for the defendant, *held* correct, on the ground that the evidence was not sufficient to support a verdict for damages. DAY and BECK, JJ., as to the sufficiency of the evidence, *dissenting.*

### *Appeal from Jones District Court.*

#### THURSDAY, JULY 13.

THIS is an action to recover the value of two colts which it is alleged were killed by being run over by one of defendant's trains. There was a trial by jury. At the close of the introduction of the plaintiff's evidence the court, on motion of the defendant, directed the jury to return a verdict for the defendant. Plaintiff appeals.

*J. W. Jamison*, for appellant.

*Sheean & McCarn* and *D. S. Wegg*, for appellee.

ROTHROCK, J.—The plaintiff owns a farm through which defendant's road passes in such a manner that there is a field or pasture of five or six acres on the north side of the road. The road is fenced through the farm and there is a private crossing, and two gates, one on the north and one on the south side of the track, erected and maintained for the convenience of the plaintiff, in the use of her land on the north side of the road. The gate on the north side opened into the pasture; it did not turn or swing into the right of way of the road. On the morning of October 11, 1881, the gate was open some two or three feet, and two of the plaintiff's colts were found dead upon the right of way, having been killed by a passing train. For some time before the accident the

two colts which were killed, and another colt and some calves, had been pasturing in the field north of the track.

It appears to be conceded that the colts went upon the track through the gateway. There is no claim that the fence at any other point was defective. And we do not understand that the gate, as originally constructed, was insufficient, either in its construction or fastenings. The only evidence on that point is by one witness who states that "this kind of gates are ordinarily used and considered good." It appears that it was made of inch pine lumber, but of how many boards, what length and how constructed, we are not advised by the record. This is probably to be accounted for by the fact that there was a model of the gate used upon the trial, and the court and jury were thereby enabled to see at once how it was constructed, and the extent of the defects therein, which plaintiff claimed was the cause of the accident. As near as we can tell from the evidence the board in the gate next to the top was broken some two or three feet from the end where the gate fastened. The short end of the break hung down at the broken end of it, and the long end remained in place. It is not claimed by appellant that this opening was sufficient to allow the colts to pass through. It is evident from the above statement that this would be impossible. But it is claimed that one of the colts put its head through this opening and pushed the gate back so that it would open, and thus opened the gate, and that all of them then passed through and on to the railroad track.

If this theory was supported by evidence, either direct or circumstantial, the court erred in directing the jury to find for the defendant. It will be observed that plaintiff does not claim that the gate was liable to be opened by the action of the wind or by animals rubbing against it, as was found to be true in *McKinley v. C., R. I. & P. R. Co.*, 47 Iowa, 76. Neither is it claimed that any witness saw the gate opened by the colts. The evidence which, it is urged, supports the plaintiff's theory is that two men on the day before the acci-

dent saw a calf attempting to crawl through the opening made by the broken board, and after it had got its head and one or two legs through, one of the men "ran and hallowed" and the calf pulled back and in its struggle getting out of the gate it moved it back so as to clear the fastening and pulled the gate open and passed through.

The men drove the calf back, and one of them raised up the short end of the broken board, and as it was splintered and broken at an angle, he nailed it to the other end and thus left the broken board all in line. This is the last account given of the gate until after the accident, and this is all the evidence excepting that one of the colts was brown and there was some brown hair found on the gate after the accident. The color of the calf is not shown.

We think if the court had submitted this case to the jury on the evidence, and there had been a verdict for the plaintiff, it would have been its duty to have promptly set the verdict aside as being wholly unsupported by evidence. In order to have found a verdict for the plaintiff the jury would have been required to have imagined that one of the colts performed exactly the same feat which the calf executed the day before, and without any person being present to assist it by frightening it into making the struggle which opened the gate. This will not do; verdicts must have evidence to support them and must not be founded upon mere theory or supposition.

AFFIRMED.

DAY, J., *dissenting.*—I cannot concur in the foregoing opinion. In my opinion the evidence was abundantly sufficient to sustain a verdict for the plaintiff, and the court erred in directing the jury to return a verdict for the defendant.

The colts were in a field separated from the defendant's road by a fence and gate constructed by the defendant. This gate is so constructed that animals can open it. This is proved by the fact that the plaintiff's calf did open the gate

the day before the plaintiff's colts were found killed. Evidence was introduced tending to show that the gate does not rest on the ground, but slides on a rest between two posts, that it could be opened without raising it up, and that the strength of a good silk thread would open it. On the morning that the colts were found killed the gate was open a few feet, and the board was broken and lopped down the same as it was the day before when the calf got through. The break in the board was an old break. A witness for the plaintiff testified that after the accident he noticed on the upper board where the horses had had their heads through and had been rubbing, and there was hair on it that would resemble the hair and mane of the brown colt that was killed. It is conceded in the majority opinion that the colts went upon the defendant's track through the gate. We have then the gate so constructed that it could be opened by a silk thread, and was in fact opened by a calf the day before the accident; the gate was open the morning that the colts were killed; and the colts passing through the gate upon the track. From this evidence but two inferences are possible. The gate was opened and left open by some person, or was opened by the animals in the field because of its defective construction. In my opinion, in the absence of any testimony that the gate was opened by any person, the jury were fully authorized to find that it was opened by the animals in the field as it had been the day before. The case falls fully within the principle of *McKinley v. C., R. I. & P. R. Co.*, 47 Iowa, 76. In my opinion the judgment of the court below should be reversed.

BECK, justice, concurs in these views.