## CONNYERS v. THE SIOUX CITY AND PACIFIC RAILWAY COMPANY.

1. **Pleading**: INCONSISTENT AVERMENTS : WAIVER. Where the petition of plaintiff, as in this case (see opinion), contains inconsistent averments, and the defendant makes no objection, but pleads a general denial, he waives the error, and the court may properly instruct upon the issues raised by the inconsistent averments, and objection cannot be raised for the first time in this court. (See *Scott v. Railway Co.*, 68 Iowa, 360.)

2. **Railroads**: NIGHT PASSENGER TRAINS : SPEED AT PUBLIC CROSSINGS : DILIGENCE AS TO CATTLE THEREON. Due diligence in operating night passenger trains does not require that their usual high rate of speed shall be reduced at every public crossing to fifteen miles an hour in order to avoid injury to cattle which may possibly be found thereon. And in this case, where there was no proof of negligence in any respect on defendant's part, unless it was in approaching the crossing at which plaintiff's cattle were killed, without slowing the train, when the defendant's employes knew that cattle of plaintiff had been killed there by the same train on several prior occasions, but plaintiff himself knew the same fact as well, and yet allowed his cattle to be at large at that time and place, *held* that plaintiff could not recover for his cattle so killed.

*Appeal from Monona District Court.*—HON. C. H. LEWIS, Judge.

FILED, OCTOBER 11, 1889.

ACTION for the recovery of damages sustained by the plaintiff by reason of the killing of certain of his cattle upon the track of defendant's railroad by locomotive engines and trains run by the defendant. There was a trial by jury, and a verdict and judgment for the plaintiff. Defendant appeals.

*John B. Hawley* and *John E. Selleck*, for appellant.

*McMillan & Kindall*, for appellee.

ROTHROCK, J.—I. It is claimed in the petition that, in the month of June, 1885, two steers, the property of plaintiff, were killed by one of defendant's trains; that, in June, 1886, two cows were killed in the same manner; that, on the sixth day of July, 1887, one "blooded bull" and one cow were killed by another train; that, on the thirteenth day of July, 1887, another cow was killed by another train; and that, on the fourteenth day of the same month, one steer and one cow were killed in the same manner. The ground upon which recovery was sought for the value of the cattle was that they were killed at a point on the railroad where the defendant had the right to fence its track, and had failed to do so, and that the cattle were killed without any wilful act of the plaintiff or his agents. All through the petition the fact is kept prominent that the cattle were killed at a point where the defendant had the right to fence its road. In addition to this averment it is several times alleged in the petition that the killing occurred while the defendant was operating and moving its engines carelessly and negligently. But in the same connection the averments are made that the killing was done at points where defendant had the right to fence its track. To this petition there was an answer, which is, in substance, a general denial. It will be observed that the petition in effect negatived the idea that the cattle were killed at a public crossing. But the averments of negligence and carelessness in operating the

1. PLEADING: inconsistent averments: waiver.

train also presented the question applicable to the killing of stock at points where there was no right to fence —as, at a public crossing. The defendant was content to meet this kind of a pleading by a general denial. And the court very properly charged the jury, in substance, that if the right to fence existed, and there was no fence, the defendant was liable; and if the killing took place upon a public crossing it was incumbent on the plaintiff to show that the damages were caused by the negligent and careless operation of the trains. It is n~t for this court to determine upon this appeal whether this petition was vulnerable to a motion to divide, or for more specific statement, or that it was subject to any other objection. ·The parties, having elected to go to trial upon it, cannot now object to it because it contains inconsistent averments. This is a sufficient answer to much of the argument of the appellant's counsel. See *Scott v. Railway Co.*, 68 Iowa, 360.

II. The plaintiff, in introducing his evidence in chief, endeavored to show that notwithstanding the

2. RAILROADS: night passenger trains: speed at public crossings: diligence as to cattle thereon.

cattle were killed at a place where there was a crossing over the track, with cattle-guards on each side of the crossings, and signboards for a crossing, and fences up to the cattle-guards, yet that there was in fact no public highway at that point. No effort was made to prove that there was any negligence in the manner of operating the trains, unless the plaintiff expected that the jury would infer, from the fact of the repeated slaughter of his cattle at that point, that the trainmen should have put the speed of the train at such a rate as that it could be stopped, when the cattle were discovered, in time to have avoided accident. Upon the issue as to the crossing, the plaintiff failed. The jury found, in answer to a special interrogatory submitted to them by the court, that there was a public road or way over the railroad where the cattle were killed at the time and place where they were killed. But the jury found, in answer to another interrogatory, that the defendant wa liable for the killing, because the trains were run

high rate of speed, knowing that the crossing was a dangerous point. It is claimed by appellant that this finding is wholly without support in the evidence, and that, if the defendant's trainmen knew that cattle were accustomed to be upon the track, the plaintiff had equal knowledge of that fact, and he was negligent in permitting his cattle to go upon the crossing. All of the cattle were killed by a night passenger train going north on the railroad. That train consisted of about eight cars, and passed over the road at about nine o'clock p. m. There was an unobstructed view of the track at the crossing for a considerable distance along the railroad. In short, it was an ordinary crossing, and there was no more reason why trainmen should apprehend that cattle would be found on the track at that place than at any other crossing in the open country, unless the fact that the plaintiff's cattle were killed at that point should have been regarded as such notice as to put the men in charge of the train on their guard. There is no evidence that cattle of other persons were killed at that point. The evidence shows that the train which struck the cattle was at all of the times named running on its usual schedule time, and at a rate of some thirty-five to thirty-eight miles an hour; that the air brakes were in perfect order; and that the usual signals for crossings were given; that the headlight on the engine was burning, and that the cattle were seen by the engineer in charge of the engine when it was within about three hundred or three hundred and fifty feet of the cattle on the crossing, and that they could not have been discovered by the aid of the headlight at a greater distance; and that it was absolutely impossible to stop the train in a less distance than twelve hundred feet; and that it is much more dangerous to the safety of the train and passengers to attempt to stop the train and strike an obstruction like cattle at a slow rate of speed than to keep up the speed. It further appears that the train could not have been stopped so as to avoid the collision unless, it was slowed down to a speed of not to exceed fifteen miles an hour

before nearing the crossing. It appears that the plaintiff has a farm in the vicinity. The house on the farm is about a quarter of a mile from the railroad. The cattle for which he claims damages were killed at five different times in a period of a little more than two years. For the first casualty there is no possible theory upon which the defendant can be held liable, and for all that occurred after that the plaintiff had the same ground to apprehend danger from his cattle being at the crossing that the trainmen had. In order to entitle him to recover for any of his cattle he must have presented his case to the jury on the theory that, although he knew that his cattle were wont to go and stand or lie upon that crossing in the night, yet he would persist in making a cattle-yard of it, to the great peril of the traveling public. His position is in effect that at all public crossings in the country where cattle are kept upon adjoining farms night passenger trains must be slowed down, so that when within about three hundred feet of crossings cattle upon the crossings may be seen by the engineer, and the train stopped, and injuries prevented. We have stated the plain, unvarnished and undisputed facts in the case, and we can discover no reasonable theory upon which the verdict can be sustained. At the present day, when by reason of substantial and well-ballasted roadbeds, and heavy steel rails, with even-surfaced tracks, the scheduled time of passenger trains over nearly all the railroads of the country requires a high rate of speed, there is no reason for holding that public travel shall be impeded by a requirement that night trains must be slowed down to fifteen miles an hour at every public crossing in the country. It is true that this court has held that the mere fact of the owner permitting stock to run at large is not evidence of contributory negligence. *Whitbeck v. Railway Co.*, 21 Iowa, 103; *Evans v. Railway Co.*, 21 Iowa, 374; *Searles v. Railway Co.*, 35 Iowa, 490. But the facts in the case at bar show without conflict that there was no negligence in the operation of th road, and that the claim of the plaintiff, that the sp

of the train should have been reduced because cattle were likely to be on the crossing, cannot be sustained, because he knew that fact when he permitted his cattle to be upon the crossing at night. The case in its facts is very much like *Smith v. Railway Co.*, 34 Iowa, 506, where it was held that the plaintiff could not recover.

REVERSED.