PETER MEARS v. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

**Railroads:** TRESPASSING STOCK. An engineer has the right to presume that the track is clear of stock at a point where the company has inclosed the right of way, and he owes no duty to the owner in relation to trespassing horses until their presence is discovered, and then only the duty of using ordinary care to avoid injuring them. Citing *Harrison v. Railway Co* , 6 S. D. 100 (60 N. W. Rep. 405); *Railway Co. v. Noble*, 14 Ill. 578; *Railway Co. v. Barlow*, 71 Ill. 410.

CONDUCT OF ENGINEER. Where the engineer of a train by which horses were killed first saw such horses as they were getting on the track, and on seeing them whistled for brakes, and reversed the engine, which was running down grade at twelve to fifteen miles an hour, toward an open bridge, there was no showing of negligence in the management of such train; and it was proper to omit the usual stock alarm whistle.

NEGLIGENCE: *Gates*. Where the gate in a right of way fence at a farm crossing, which was an ordinary gate, sliding between two posts at each end, and to open which it was necessary to shove it back on a line with the fence, and then carry it around, appeared to have been opened by pushing it back and towards the railroad track, permitting the escape of horses to the right of way, no want of ordinary care in the construction or maintenance of such gate was shown, in the absence of evidence that it was defectively constructed, or out of repair, or required some other mode of fastening.

*Appeal from Clinton District Court.*—HON P. B. WOLFE, Judge.

THURSDAY, OCTOBER 14, 1897.

ACTION to recover the value of three horses killed by one of defendant's trains.  Defendant answered,

denying generally, and verdict and judgment were rendered for plaintiff.  Defendant appeals.—*Reversed.*

*Hubbard & Dawley* for appellant.

*Walter I. Hayes* and *F. P. McGinn* for appellee.

GIVEN, J.—I.   It is not disputed but that plaintiff's horses got upon defendant's right of way through a gate in the right of way fence at a farm crossing, and were struck and killed by one of defendant's trains. Plaintiff alleges as grounds for recovery that said gate was defective, and that defendant's agents negligently and carelessly ran said train over and upon said horses. Defendant contends that there is no evidence to sustain either of these allegations, and that, therefore, the court erred in overruling its motion for a verdict and its motion for a new trial.  The gate is described, by all the witnesses who speak concerning it, as an ordinary sliding gate, such as is in common use.  "The gate was slid in between two posts, with a piece of board between the two posts.  At the other end the posts stood apart, and the gate shoved in between the posts.  It was a common sliding gate.  There was no fastening on the gate."  There is no evidence that the gate was defectively constructed, was out of repair, or that any other fastening than placing the ends of the boards between the posts was required or used on such gates.  To open this gate, it was necessary to shove it back on a line with the fence, and then carry it round.  On the morning preceding that on which the horses were killed, the gate was standing closed, and after the horses were killed it was found to be pushed back about four feet, and towards the track about four feet.  We think it highly improbable that the horses did, or could have, opened this gate as it was opened, but more probable that it

was opened by some person. If it be conceded that
the horses did, in some way, work the gate open, still
there is no evidence of want of ordinary care on the
part of the defendant in the construction or mainten-
ance of the gate. It was just such a gate as is in com-
mon use, and was in good order.

II. The train that killed the horses was a freight
of twelve or fifteen cars, going west. In approaching
the place of the accident the train came up a steep
grade to a point thirty-six rods east of the bridge where
the horses were killed, from which point it is down
grade, west to the bridge. The up grade from the east
is such that horses on the right of way between the sum-
mit and the bridge cannot be seen from the cab of the
engine until the engine is near the summit. The
track being inclosed for a long distance east
and west, the trainmen had no reason to expect
that horses would be on the right of way at the place
of the accident; but when known to be there it was
their duty to exercise ordinary care to avoid injuring
them. The engineer testifies: "I first saw the ani-
mals on the track. They came up on the left-hand side
and I didn't see them until after they got onto the track.
I saw them getting onto the track. They came over
from the left-hand side onto the track. When I saw
them, I whistled for brakes and reversed my engine. I
applied brakes, and did everything in my power to stop
the train." The train was running down grade at
twelve to fifteen miles an hour towards an open bridge.
Therefore, it is entirely reasonable that the engineer
would have done just what he says he did do, and his
testimony stands uncontradicted. True, a witness who
was some distance away, says he "just heard one little
whistle. Just about the time they whistled the train
stopped." This rather confirms than contradicts the
engineer's testimony that he whistled for brakes, as

evidently but a brief time elapsed between the call for brakes and the stopping of the train. With the frightened horses fleeing before the train as they were, towards the open bridge, there was no occasion for any other whistling that the call for brakes; indeed, it may be questioned whether it would not have been negligence to have sounded the usual stock alarm. We do not find any evidence that the trainmen were negligent or careless in the management of the train, nor that the defendant was negligent in the construction or maintenance of said gate. We think the court erred in not sustaining defendant's motion for a verdict, and its motion for a new trial on the ground that the evidence did not justify a verdict for the plaintiff.

III. The defendant asked instruction to this effect: That, having inclosed its right of way at the place where these horses were, it was not bound to anticipate that horses or cattle would be there on the track, but had a right to presume that the track was clear; and that defendant owed no duty to the plaintiff in relation to his trespassing horses until their presence was discovered, and then only owed the use of ordinary care to avoid injury to the horses. That such is the law, see *Baker v. Railway Co.*, 95 Iowa, 163; *Connyers v. Railway Co.*, 78 Iowa, 410; *Thomas v. Railway Co.*, 93 Iowa, 248; *Railway Co. v. Barlow*, 71 Ill. 640; *Harrison v. Railway Co.*, 6 S. D. 100; (60 N. W. Rep. 405), and *Railway Co. v. Noble*, 142 Ill. 578 (32 N. E. Rep. 684). The instructions given were not explicit on this subject, and those asked should have been given. Other errors assigned and argued are sufficiently considered and disposed of in what we have already said. It follows that for the errors named above, the judgment of the district court must be REVERSED.