A. F. DAILY, Appellee, v. CHICAGO, MILWAUKEE & St. PAUL RAILWAY COMPANY, Appellant.

**Railroads:** KILLING STOCK: FAILURE TO FENCE.   A railway company failing to fence its track where the duty exists is liable for stock killed by reason of its neglect, and failure to repair on notice or after a reasonable time is failure to fence under Code, section 2055.

**Killing Stock:** NEGLIGENCE: BURDEN OF PROOF.   Stock escaping from a pasture into a lane adjoining the right of way and opening into a public highway is there running at large, and if it goes onto the track through a defective right of way fence and is injured a *prima facie* case of negligence is made,

and the burden shifts to the railway company to show.its free-dom from negligence. It is not sufficient to negative a case of negligence thus made to show that the stock was in the pasture the day before, or to presume that some one opened the pasture gate allowing it to enter the lane.

*Appeal from Kossuth District Court.*—HON. A. D. BAILIE, Judge.

TUESDAY, OCTOBER 13, 1903.

ACTION to recover the value of a mule killed. upon defendant's right of way by one of its passing trains. The opinion states the facts. Trial to a jury, and verdict and judgment for plaintiff. Defendant appeals.—*Affirmed.*

*J. C. Cook, H. Loomis* and *Clarke & Cohenour* for appellant.

*Thomas O'Connor* and *F. M. Curtis* for appellee.

BISHOP, C. J.—Defendant's line of road runs through the city of Algona nearly east and west. To the west from Thorington street, and connecting with a cattle guard on the west line of said street, the tracks are fenced on both sides. On the north side of the track there are two fences, the first extending west indefinitely, and the second extending for some five hundred feet only, to what is referred to in the evidence as the "McCoy pasture." The first of such fences, which we will call the "south fence," connects with the cattle guard at Thornington street, and, as it runs east and west, is located about a rod south of the north line of defendant's right of way. The north fence is on the line of the right of way, and when it reaches the McCoy pasture it turns south, and is joined to the south fence. Thus a lane about a rod wide is formed, extending from the said street to said pasture. At the street end it is open, passage into it being wholly unob-structed. At the pasture end there is a gate, opening

into the pasture field.   Both fences were built by the defendant company, and whatever repairs have been made thereon were made by the employes of the company. The mule in question had been kept in said pasture, and was known to be therein the day before it was killed. During the evening before it was killed it was seen in the said lane.   It is conceded that the south fence between the lane and the railway tracks had been out of repair for a long time, and there was evidence tending to prove that the mule in question strayed upon the tracks through such defective place in the fence, and that it came to its death by being struck by a passing train.   It does not appear how, or at what time the mule escaped from the McCoy pasture.

The liability of a railway company for stock killed by its trains is fixed by section 2055 of the Code.   That section provides, in substance, that any railway corporation

1. KILLING stock: failing to fence its railway against live stock
failure to
fence.   running at large where the right to fence exists shall be liable to the owner of any stock killed by reason of the want of such fence, etc.; and a failure to repair upon notice, or within a reasonable time, is a failure to fence, within the meaning of the statute.   *Aylesworth v. Railway*, 30 Iowa, 459; *Brentner v. Railway*, 58 Iowa, 625; *McCormick v. Railway*, 41 Iowa, 193.

Stating it in general terms, the contention of the appellant is that it cannot be held liable in this case, for that, as to stock running in the McCoy pasture, it was under no obligation to maintain the fence bounding this lane on the south; and, further, that as to the particular animal in question there is no direct evidence tending to prove that it came into the lane from the east or open end thereof, and· was not, therefore, stock running at large, within the meaning of the statute.   Such contention was embodied in a motion to direct a verdict, which was overruled, and in requests for instructions which were refused.

We think there was no error in the rulings thus complained of. In the first place, were it not for the fact that the east end of the lane was open and unobstructed, we should be wholly disposed to agree that there was no obligation on the part of the defendant company to keep up or maintain the south fence. In view of such opening, however, the south fence became and was the railway fence, and the existence of the north fence became an immaterial consideration. We may qualify this by saying that, inasmuch as the north fence was on the right of way line, stock shown to have escaped through the same, or through the gate at the end of the lane from the McCoy pasture, directly upon the right of way, no negligence upon the part of the company appearing, it might be urged with much force that no liability for damages should attach to the company. Saying this is no more than to say that if a railway company, for the convenience of an adjoining landowner, puts in a gate between its right of way and a field of such owner, it cannot be held liable for injury to stock occasioned by the careless use of such gate by such owner or others not persons in its employ. *Mears v. Railway*, 103 Iowa, 203.

But such doctrine cannot be made applicable to the case as it is made in the record before us. The lane in question was an openway, and stock straying thereon 2. Killing stock: negligence: burden of proof. would be stock running at large, within the meaning of the statute. Now, the record does not answer the questions as to the time when and the place where the mule escaped from the pasture. It is certain enough that it was in there the day before it was killed, and it is also to be said that no one saw the gate open, and no one found any breaks in the fence of the McCoy pasture. But, with these facts before us, the questions still remain unanswered. The situation may be summed up by saying that we have simply the

case of a mule running at large today that was within an apparently safe inclosure yesterday. This being true, and the mule having gone from an open way through a defective fence, and upon the tracks of the railway, where it was injured, a *prima facie* case of negligence on the part of the company must be said to have been made out. Such being the circumstances, the burden was then shifted to the defendant, to show its freedom from negligence. This conclusion has support in the following cases: *Brentner v. Railway, supra*; *Small v. Railway*, 50 Iowa, 338. And, in our opinion, it is not sufficient, to negative the case of negligence thus established, to point out that the mule was in a safe place the day before, or to indulge in the conjecture that some one opened the gate, and allowed it to enter the lane. In reason, the defendant may well be held to expect that stock would find its way into the lane, and ordinarily it could make no difference whether stock found there came from an adjoining inclosure or from one a mile away. If the company relies upon the fact that in getting upon its right of way such stock came through a gate in a fence separating its right of way from an adjoining field, it must prove such fact. The court cannot indulge in a mere supposition to relieve it from the effect of a *prima facie* case of negligence made out against it.

We discover no error, and the judgment is AFFIRMED.