H. S. TITUS v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY CO., Appellant.

**Railroads:** INJURY TO STOCK: EVIDENCE. In an action for killing
1 a horse, which passed through a right of way gate onto the track, the evidence is held to justify a submission of the question as to how the gate was opened.

**Right of way fence:** SUFFICIENCY. Where it is determined that a
2 right of way gate was opened by stock, it is then for the jury to determine whether it was sufficient in construction and fastening.

**Evidence:** ALTERATION OF FENCE AFTER ACCIDENT. Where the distance between the boards of a right of way gate, shown to have
3 been opened by stock rubbing thereon, is material in determining the sufficiency of the gate, evidence that subsequent to an accident a wire had been placed between the boards was prejudicial.

**Right of way fences:** DOUBLE DAMAGES: STATUTES. There is no
4 conflict between Code, sections 2055, 2057 and 2058 relating to right of way fences and the penalty and damages resulting from a failure to properly fence; and unless such fence complies with the statutory requirements the penalties provided in section 2055 will follow.

*Appeal from Marshall District Court.*— HON. OBED CASWELL, Judge.

TUESDAY, MAY 2, 1905.

Suit to recover double damages for killing plaintiff's horse. Trial to a jury, and verdict and judgment for the plaintiff. The defendant appeals.— *Reversed.*

*J. C. Cook, H. Loomis,* and *Binford & Snelling,* for appellant.

*C. H. Van Law,* for appellee.

Sherwin, C. J.— The plaintiff's horse went from a pasture through a gate in the defendant's right of way fence and was killed by one of its trains. The gate was an ordinary sliding one, sixteen feet long, four 6-inch boards in width, and was fastened by slipping the front end between two posts placed about six inches apart. The surface of the ground was nearly or quite level, but the heel of the gate was raised above it from three to seven inches, and, when closed, the front end rested on the ground. The two upper boards of the gate were about fourteen inches apart. The proof is conclusive that the gate was closed in the ordinary manner at about 5 o'clock in the afternoon before the horse was killed, and the next morning it was found open, having been pushed back about eighteen inches and carried into the pasture about nine feet. The lower edge of the upper board of the gate clearly showed that it had been a favorite rubbing place for the stock in the pasture, and at the time in question there was horse hair sticking to it, and other indications of its recent use for that purpose. The petition alleged that the gate was insufficient in construction, and no other negligence was charged.

The case is extremely doubtful on the facts, but we are inclined to the view that the evidence relating to the condition of the edge of the upper board sufficiently distinguishes

1. RAILROADS: injury to stock; evidence.

it from the Mears Case, 103 Iowa, 203, and the Koenigs Case, 98 Iowa, 569, to justify the court in submitting the question as to how the gate became open to the jury.

In answer to a special interrogatory, the jury found that the gate was, in fact, opened by the stock in the pasture; and, conceding that such finding was supported by sufficient

**2. Right of WAY FENCE: sufficiency.** evidence, it was then for the jury to say, from all of the evidence before it, whether the gate was sufficient in construction and fastening. This question was also answered adversely to the appellant's contention, and the finding has such support in the evidence that we cannot disturb it.

It having been shown that the gate, if opened by stock at all, was opened in some way by the use of the upper board for rubbing purposes, the question of the space between the

**3. Evidence: alteration of fence after accident.** upper and the second board became material in determining whether the gate was improperly constructed. The court permitted the plaintiff to show that after the accident in question the defendant had fastened a wire between these two boards, and this, we think, was prejudicial to the defendant. Evidence of subsequent alterations or repairs is generally incompetent, and we find nothing in the record warranting its admission in this case. *Hudson v. C. & N. W. R. R. Co.,* 59 Iowa, 581. And because of this error the case must be reversed.

We are also of the opinion that the court should have advised the jury that no particular method of fastening the gate is required by the statute, and that, if the fastening was reasonably sufficient, it was enough to meet the requirements of the law.

The court instructed as follows: " The fence by law required should be constructed either with five barbed wires securely fastened to posts not more than twenty feet apart,

**4. Right of WAY FENCES: double damages; statutes.** or with five boards securely fastened to posts not more than eight feet apart, the fence in either case to be at least fifty-four inches high. There is a failure to fence unless the company builds substantially such a fence as the law prescribes. Such fence includes proper gates, and corresponding in sufficiency, so

far as a gate may do so, with said required fence, with proper and sufficient fastenings, at private crossings which are not constructed for open crossings, and such a crossing as is in question in this action." And, further, that a gate, to be sufficient, must be practically the same as a fence. It is contended that these instructions were erroneous, because the action was plainly brought under section 2055 of the Code, which provides for double damages where there is a failure to fence; and it is said that a failure to comply with section 2057 does not make the company liable for double damages. If the defendant is right in this, it is clear that the instructions should not have been given. The provisions of section 2055 were in force long prior to the enactment of section 2057 of the Code, which defines a legal right of way fence, and prior to the enactment of section 2058, which provides a penalty for a failure to fence the track as provided in the preceding section. Before the enactment of these later sections we held that it was a complete defense to an action under section 2055 to show that there was a reasonably sufficient fence. *Lee v. Railway Co.,* 66 Iowa, 131; *Shellabarger v. Railway Co.,* 66 Iowa, 18. As the Legislature had not at that time made it necessary to fence the track at all, nor determined what should constitute a sufficient fence, it is manifest that all that could be required of the company was to build a reasonably sufficient fence; but the Legislature had the undoubted right to require fences along the right of way and to designate the kind of fence that should be built to meet such requirement. Before these statutes were enacted, we had also held, in *McKinley v. Railway Co.,* 47 Iowa, 76, that insufficient fences and gates were, in fact, no fences or gates at all and it must be presumed that the Legislature had in mind such rule and the rule as to the fence required to avoid liability under section 2055, when the present statute was enacted; and, if this be true, there can be no serious doubt as to the intent of the statute, which was, we think, among other things, to fix absolutely the kind of fence that

should be considered sufficient to defeat liability. In other words, it is said, in effect, that unless the fence built complies with the requirement of the statute, it is in fact no fence and affords no protection against the liability imposed by other provisions of the law. We find no conflict between the statutes, and believe that it was the legislative intent that a failure to fence as required by section 2057 should be treated as an entire failure to fence, and that the liability and penalty provided for in section 2055 should then follow.

As we have heretofore said, there was error in admitting certain testimony, and for that reason the judgment is reversed.— *Reversed.*