NOAH HARPER, Appellee, v. THE CHICAGO, ROCK ISLAND &
PACIFIC RAILWAY Co., Appellant.

**Railroads:** INJURY TO LIVE STOCK: EVIDENCE: SUBMISSION OF ISSUES.
1 In this action for the killing of live stock on defendant's right of
· way, the evidence is held to require submission of ·the question
whether the stock was on the right of way or on the highway when
struck by defendant's train.

**Same:** INJURY TO LIVE STOCK: DEFECTIVE CATTLE GUARDS: BURDEN OF
2 PROOF: INSTRUCTIONS. Where it appeared that defendant's fence
and cattle guard were or out of repair, and by reason thereof plain-
tiff's cattle went upon the right of way and were killed by a passing
train, a *prima facie* case for plaintiff was made, and the burden of
showing freedom from negligence because of the defective condi-
tion of the fence and guard was then on the defendant; especially
where the uncontradicted evidence showed that the cattle guard had
been out of repair for some time, and the testimony tended to show
that the fence was defective because of improper construction.
This is the rule of the statute and the later decisions, and the
instructions in this case conform to the rule.

*Appeal from Appanoose District Court.*—HON. D. M. ANDER-
SON, Judge.

THURSDAY, OCTOBER 23, 1913.

ACTION at law to recover double damages for certain live
stock killed by the defendant either upon its right of way or
at a highway crossing in Appanoose county. Plaintiff alleged
that the animals were killed at a place where defendant had a
right to fence but had not done so, and that defendant main-
tained, at the highway crossing, cattle guards, on either side
thereof, which were defective and out of repair, and that the
stock got upon the right of way by reason of these defective
guards or one of them. Defendant's answer was a general
denial; and the case, on the issues joined, was tried to a

jury resulting in a verdict and judgment for plaintiff in the sum of $260, and defendant appeals.—*Affirmed.*

*F. W. Sargent* and *J. H. Johnson,* and *Porter & Greenleaf,* for appellant.

*Wilson & Smith,* for appellee.

DEEMER, J.—At the close of all .the testimony, defendant moved for a directed verdict on the ground that there was not sufficient testimony to take the case to the jury on the question as to where the cattle were killed, and in its motion for a new trial defendant also claimed that the verdict was without support in the evidence. These same propositions are now relied upon for a reversal. The cattle were killed about 8 o'clock in the morning of May 29, 1910, by a through passenger train, operated by the defendant from Chicago to Los Angeles, Cal. The animals were seen upon defendant's right of way about 7 o'clock in the morning, and a witness testified that, about half an hour before they were struck, he drove them back on the highway, away from the railway track and toward the pasture in which they were being kept. The engineer and fireman said that the cattle were in the highway when struck by the train. When found, the animals were something like eighty or ninety feet west of the highway crossing and about ten feet south of the south rail of the track. From fifteen to eighteen feet east from where the cattle were found, the ground was plowed up and the weeds brushed down. It had rained during the night previous to the accident, and cattle tracks were plainly visible on the right of way both east and west of the highway crossing. The train was running about forty-five miles per hour, and one witness testified to seeing some blood and hair on one of the bolts of the track between the plank crossing and the west cattle guard. But he was contradicted by at least three wit-

1. RAILROADS: injury to live stock: evidence: submission of issues.

nesses who were present at the time the blood was said to have been discovered. Plaintiff himself testified that, shortly after his cattle were killed, he went to where their bodies were lying; that they were from eighty to one hundred feet west of the west wing fence at the highway crossing, one with its head to the east and the other with its head to the west; that he followed their tracks westward one hundred and twenty to one hundred and thirty feet and noticed that at that point the animals had turned back east again to near the point where the bodies were found. The cattle got out of the pasture, where they were usually kept, through a gate and had gone to the track over the public highway.

The following is some of the testimony with reference to the cattle guards and the surroundings immediately after the accident:

.The cattle guards on the west side of the crossing were filled up and part of them were out. There must have been three or four out. They were filled up with rock. That is, the guards were just laid on the ballast. Just immediately south of the west cattle guard there was a three-wire fence. The staples were out of the wire and the wire was slack. There were prints there of the hoof in the soft dirt. There had been a big rain and the ground was very moist. The cattle had had mud on their feet from the road and there were prints there of their feet. These tracks were two and one-half feet south of the south rail and looked like there had been more than one head of cattle. . . . The cattle guards were made of light pieces of pointed cornered wood, and the strips were laid parallel with the rails and fastened to the ties. I had not seen any change in the plan of that cattle guard for a year or more. Ever since the road had been surfaced the cattle guard had been constructed on the same plan. . . . Q. It had been in the same condition practically as the way the cattle guards were built for about a year? A. They were tore out more or less; they weren't always in. Q. It was built the same? A. Yes, I think so. Q. You hadn't seen any change in the plan of that cattle guard for a year or more? A. I hadn't seen nothing there. It might be possible that I hadn't examined the cattle guard at this cross-

ing for six months before this accident happened. I had examined it different times before that. Drove cattle along there during the summer (the summer before). The cattle had run in there at different times, both ways.

(Another witness said:) . . . I observed that the cattle guard on the west side of the crossing was mostly all gone. The center of it, between the two rails, was mostly all gone. There might have been two or three pieces laying there. I observed some cattle tracks leading through these cattle guards. The south wing fence consisted of three wires. These wires were pretty slack. There was a vacant space between the cattle guard and wing fence about two feet wide, and I observed the cattle tracks through that. . . . On the west side of the crossing on the south side of the track there was no board wing there. There was a wing there, but it was down. There was no wing up there at all fastened to one post fastened to the track. I don't know when it had been knocked down or taken away. On the south side, the board wing from the end of the wires down to the end of the ties was out.

(Another testified:) My attention was called to the panels being out of the cattle guard in the center of the track. There was a number of them out. Couldn't say how many. In the center was where my attention was called to the cattle guards. There was half of them out. This was on the west side of the crossing. It left an open space of two feet, maybe more than that, without cattle guards. As near as I could judge, there were three of the panels out, maybe four. Did not look to see the condition of the fence leading up to the cattle guard on the south side of the railroad track on the west side of the highway crossing.

(And still another said:) . . . There was a space of two feet between the fence on the south side of the railroad, at the west cattle guards, and the cattle guards.

Defendant offered no testimony whatever to rebut the evidence which we have quoted regarding the condition of the cattle guard and the wing fences. Notwithstanding the more or less direct testimony of the engineer and fireman of the train which struck the cattle that they were upon the highway crossing when struck, we think it was a fair question

for the jury to say whether or not their testimony was to be believed and as to just where the cattle were when struck. True, plaintiff's testimony was circumstantial, but the inferences to be drawn therefrom and whether sufficient to meet the direct testimony of defendant's witnesses was a fair question for the jury. It is to be observed in this connection that the engineer somewhat qualified his testimony in this way: "Q. You don't know where they were hit, do you? A. No, sir. Q. Whether they were in the right of way or on the crossing, you don't know, do you? A. They were on the crossing the last that I saw of them."

That the cattle guard and wing fences were in a defective condition and had been for many months clearly appears from the testimony quoted, which was not contradicted in any manner by the defendant, nor was any explanation given therefor.

II. The trial court gave the following, among other, instructions:

(5) If you find that the steers in question were struck inside of the defendant's right of way and west of the crossing in question, then you will proceed to consider and determine as to whether said steers were upon said right of way by reason of the fence or cattle guard in question, or both, being defective and out of repair at the time of the killing of the cattle in question. There is no question made but that the defendant was obliged to fence and keep its fence in repair and to erect and maintain in proper repair its cattle guard on the west side of the highway in question. A fence and cattle guard were erected and maintained at said place. No question is made as to the kind of fence and cattle guard so maintained, and therefore the only question here to determine is as to whether said fence and cattle guard were out of repair and defective by reason of so being out of repair.

2. SAME: injury to live stock: defective cattle guards: burden of proof: instructions.

(6) If you find by the evidence that the fence and cattle guard in question, or either of them, became defective and out of repair, and that by reason of such conditions said cattle

went upon the defendant's railroad to a point west of the crossing and were there struck by defendant's train and killed, then the defendant would be liable therefor, as this would make a *prima facie* case in plaintiff's favor, and the burden is then upon defendant to show its freedom from negligence on account of the defective condition of such cattle guard and fence, or either of them, as the case may be, and upon this question the defendant has offered no evidence to meet the *prima facie* case made by plaintiff, if he has made such case.

(7) If you find that plaintiff was the owner of the two steers in question, that they were struck and killed by defendant's train at a point upon defendant's right of way west of the crossing in question, that said steers were upon said right of way by reason of the defective and out of repair condition of the cattle guard and fence in question, or either of them, upon the west side of the crossing in question, then you will proceed to consider and determine the value of the cattle at the time of being struck and killed, and this you will determine from all the evidence in the case.

Accepting the statement made by the trial court in the fifth instruction quoted, appellant strenuously contends that the sixth and seventh are erroneous in placing the burden upon the defendant of showing nonliability. In other words, it is contended that, as the cattle guards and fences were good and sufficient when originally erected, defendant would be liable only for negligence in failing to discover defects thereafter arising and in repairing the same after they were or should, in the exercise of reasonable care, have been discovered, and that it is not sufficient in such cases for plaintiff to show that his cattle got upon the right of way by reason of the defective cattle guards or fences and were there killed by a passing train. It must be conceded that our previous cases are not harmonious upon this proposition or at least had not been down to the filing of the opinion in *O'Mara v. Railroad Co.,* 140 Iowa, 190. Previous to that there seem to have been two lines of decisions, one of which apparently supported the rule contended for by appellant's counsel, and the other a

rule that the statutes (Code, sections 2054, 2055) applied to all defective fences or cattle guards whether the defect was one of original construction or because of lack of repair or failure to properly maintain. The following are relied upon as supporting appellant's contention: *Aylesworth v. Railroad Co.*, 30 Iowa, 459; *Davis v. Railroad Co.*, 40 Iowa, 292; *Perry v. Railroad Co.*, 36 Iowa, 102; *Brentner v. Railroad Co.*, 58 Iowa, 625. On the other hand, appellee relies upon *Claus v. Railroad Co.*, 136 Iowa, 7; *Daily v. Railroad Co.*, 121 Iowa, 254; *Manwell v. Railroad Co.*, 80 Iowa, 662; *Wall v. Railroad Co.*, 89 Iowa, 193; *Norman v. Railroad Co.*, 110 Iowa, 283— all decided prior to *O'Mara v. Railroad Co.*, 140 Iowa, 190.

Recognizing this apparent, if not real, conflict in the cases, the court, in an opinion filed by McClain, J., took up each and all of these prior decisions. After referring to each and saying that the *Brentner* case, *supra*, had been overruled, the court announced the following doctrine:

When the plaintiff shows a defective or insufficient fence (that is, that there was no such fence at the time as the statute requires), the burden is then thrown upon the company to show that the defect was without its knowledge in the exercise of ordinary care (that is, that, after having constructed a sufficient fence, a defective condition had arisen without its knowledge), and that this condition had not continued for such length of time that in the exercise of reasonable care it should have been discovered. See *Wirstlin v. Chicago, M. & St. P. R. Co.*, 124 Iowa, 170. This is the view of the statute taken in the *Daily* case, *supra*, in which it is said that the animal having gone from the open way over a defective fence and upon the track of the company, where it was injured, a *prima facie* case of negligence on the part of the company must be said to have been made out, and the burden was then shifted to the defendant to show its freedom from negligence. A similar statement of the rule is found in *Mikesell v. Wabash R. Co.*, 134 Iowa, 736, where this language was used: 'The evidence that there was no fence along the right of way for a space of three hundred feet, and that there had been none for more than a year, was undisputed. Proof that the mare

was injured by reason of the want of a fence in connection with the operation of a railroad made out a *prima facie* case for the plaintiff, and the burden was upon the defendant to show the erection of a good and sufficient fence.' This construction is in harmony with the necessary construction of Code, section 2054, which in substantially the same language was in force prior to the adoption of the present Code, and in the absence of any reference in the section corresponding to Code, section 2055, a failure to maintain or construct cattle guards was the sole statutory provision on that subject, for, with reference to cattle guards, the provision was and still is that the company shall make proper cattle guards where the railway enters or leaves any improved or fenced land, etc., and any such company 'neglecting or refusing to comply with the provisions of this section shall be liable for all damages sustained by reason of such refusal or neglect, and it shall only be necessary, in order to recover for the injured party, to prove such neglect or refusal.' If with reference to cattle guards we do not give to Code, section 2055, as it now stands, the construction above indicated, we shall have on that subject two inconsistent rules, the one that plaintiff can recover merely upon proof of the injury, the other that he can only recover on proof of the neglect or refusal of· the company to construct a cattle guard, by reason of which neglect or refusal the injury has happened.

From that rule, announced after a careful review of the statutes and prior decisions, there has been no departure, unless it be in *Latta v. Railroad Co.*, 151 Iowa, 244. In that case the trial court gave the following instruction: "If the plaintiff has shown by a preponderance of the evidence that he was the owner of any cattle which it is alleged in the petition escaped from his pasture onto the right of way of the defendant and were there struck and killed by a train operated by defendant, then the defendant would be liable for the damage he thereby sustained, unless the defendant has shown that the destruction of plaintiff's property was not caused by a failure on its part to maintain the fence between the right of way and plaintiff's pasture in the manner required by law." The instruction was manifestly erroneous under

practically all of our previous decisions. See cases cited and commented upon in the *O'Mara* case, especially *Wall v. Railroad Co.*, 89 Iowa, 193; *Manwell v. Railroad Co.*, 80 Iowa, 662; *Schmitt v. Railroad Co.*, 99 Iowa, 425; *Norman v. Railroad Co.*, 110 Iowa, 283; *Craig v. Railroad Co.*, 121 Iowa, 471; *Daily v. Railroad Co.*, 121 Iowa, 254.

It is true that the argument used in the *Latta* case in disposing of the instruction quoted supports appellant's present position, but that there was no purpose to recede from the rule announced in the *O'Mara* and other like cases is apparent from the fact that the *O'Mara* case is cited with approval.

Aside from this, however, the instructions in the instant case are clearly correct as applied to the undisputed facts. Under the testimony, the cattle guards in question had been out of repair for from six months to one year prior to the accident. This testimony, being uncontradicted, made out a clear case of negligence on the part of the defendant in not discovering the defect and remedying it before the accident occurred. Surely this fact, taken in connection with the other testimony, made a *prima facie* case for plaintiff, provided plaintiff showed that the cattle got upon the right of way by reason of the defective cattle guard and were there struck and killed. Moreover, there was testimony from which the jury may have found that the cattle got upon the right of way by reason of a defective wing fence, and the testimony tended to show that this defect was due to faulty construction.

The record discloses no prejudicial error, and the judgment must be, and it is, *Affirmed.* All concurring.