DAVID HUGHES, Appellee, v. CHICAGO, BURLINGTON & QUINCY RAIL-ROAD COMPANY, Appellant.

No. 41744.

FEBRUARY 14, 1933.

Johnson & Teter and J. C. Pryor, for appellant.

Johnston & Shinn, for appellee.

MITCHELL, J.—Appellant's right of way runs through certain farm land in Marion County, a portion of which is used by appellee as a pasture for live stock. The right of way is fenced on both sides, and a gate is maintained in the fence on the north side of the right of way.

Sometime during the night of May 20, 1930, some of appellee's

stock got out of the pasture north of the right of way, and in the morning two young mules belonging to appellee were found dead on the right of way some distance east of the gate. There seems to be no question but that the mules were killed by being struck by one of appellant's trains.

In his petition appellee states that the gate "was so negligently constructed that it would not remain closed effectively against live stock running in the pasture land separated from said right of way by said gate."

The record shows that the gate was an iron gate, about ten feet wide, hung on a wooden post, and was equipped with a chain and hook for fastening. The chain was of hard metal, and was sixteen or eighteen inches long, and was soldered onto the gate. At the loose end of the chain was a hook, which was to be fastened to a heavy spike set about ten inches from the top of the gate post. There is some conflict in the evidence as to whether or not the hook was actually in the gate post. Below the chain was a No. 9 steel wire which could be wrapped around the gate post for fastening.

Appellee has filed no brief in this court, but from the record before us it is apparent that he bases his claim for recovery, not, as alleged in his petition, upon the defective construction of the gate, but, rather, as shown by his testimony, upon the inadequacy of the fastening devices with which the gate was equipped.

On direct examination he said:

"This was a hinge gate with a wire frame. It was about ten feet wide, hung on a post. The gate was a little large and did not swing against the post but swung clear through. There was a chain come with the gate, already fastened to it and it was supposed to go around the post and fasten to the post but the post was too big for the chain or the opening was too wide and the gate did not shut against the post. There was something like four or five inches of space in between. The gate had an iron hinge that was all right. The loose end of the gate had a single strand of wire around it. The wire was real short so that there was a short hook on each end, less than an inch, pointed back at about a three-quarter angle. It fastened around the end of the gate about the middle of the gate. The chain was supposed to have a lock on it but it was too short to come around. The chain was a part of the gate, soldered to the gate, into the frame. It was just left hanging there."

On cross-examination appellee said:

"I gave a statement in regard to this matter to Mr. Martin, a claim agent for the company. * * * Mr. Martin asked me how this happened and I told him. I don't know how he wrote it down. I couldn't read it. I explained to Mr. Martin I could not see to read it. It was read over to me. I was telling the truth. I told him just like I seen it. I told him the gate was a good gate. And I told him that I used that gate at 4:30 the day the mules were killed. And I told him I closed the gate and fastened it. I couldn't fasten it very well. * * * The same gate is there now. There is nothing wrong with the gate except the fastener. I fastened it as good as I could with that wire when I looked at the mules."

The appellee also offered the testimony of the hired man who was working for him at the time the mules were killed, one Benjamin F. Anderson. Mr. Anderson testified that the gate was in good shape. It was fastened, when it was closed, by a chain and a wire wrapped around the gate post.

There is no evidence in the record, nor was there any proof offered, as to how the gate happened to be open, whether it was left open or was opened by some third party. The last person, according to the record, to go through the gate was the appellee himself. He went through it about 4:30 o'clock in the afternoon of the day before the mules were found dead upon the right of way. He says that he closed the gate and that he fastened it. No testimony was offered by the appellee in regard to the condition of the gate after the time he went through. Th appellee shows that the gate could be fastened and that the appellee did fasten it.

At the close of appellee's testimony the appellant made a motion for a directed verdict upon the following grounds:

"1st. That plaintiff's evidence has wholly failed to sustain his cause of action, pleaded in plaintiff's petition.

"2nd. That if a verdict were rendered in favor of the plaintiff in this case, it would be the duty of the court to set it aside.

"3rd. That the plaintiff bases his claim for damages upon the claim that the gate provided by the defendant into the right of way fence, separating plaintiff's property from the right of way of the defendant, was defectively constructed in that the fastenings would not hold the gate.

"4th. The evidence shows that the gate was provided with a wire fastening and also a chain fastening; that the gate was practically new, and was an iron gate; that the chain provided was a part of the gate itself. The evidence shows that plaintiff himself went through this gate about four or four thirty P. M. on the evening before these mules were killed; that the mules were struck and killed by a train between two and five A. M. the following morning. The evidence shows that when he went through this gate, he failed to avail himself of the facilities provided by the railroad company for fastening the gate; that he is in no position to complain now because the gate subsequently came open, either through the actions of his own live stock or through the acts of himself or some third party; that there is no evidence of negligence upon the part of the defendant which could be claimed or shown was the proximate cause of the loss of these animals. That the record itself shows contributory negligence upon the part of the defendant such as to prevent his recovery in this action.

"That in this case the plaintiff relies and must rely upon circumstantial evidence to establish the defendant's liability; that no one testified as to the manner in which the gate did actually become open and permit these mules to leave the pasture and get onto the right of way, and in such case the circumstances must be so related, and of such a nature, as to exclude every other reasonable hypothesis, except that represented by the theory and liability claimed by the plaintiff. In this case the circumstances are not of such a nature and so related as to exclude every other reasonable hypothesis than that of liability upon the part of the defendant. That the circumstances are such and are so related as to present a theory as to how the loss occurred which is just as consistent to nonliability as to liability on the part of the defendant and on which plaintiff relies."

The statute does not prescribe the manner of construction of a gate in a railroad right of way fence. The appellee in this case alleged that the gate was negligently constructed. There is not one word of evidence in the record that the gate was not sufficient or that it was in any way defective in its construction or in its maintenance. It is undisputed in the record that there were two methods of fastening provided, a chain and a wire. It is the claim of the appellee's witnesses that the chain fastening was not sufficient, in that it did not go around the post, but there was no dispute that the gate could

be fastened with the wire which was on the gate. It was a No. 9 steel wire, and all the appellee's witnesses testified that the gate could be fastened with this wire.

In the case of Bothwell v. C., M. & St. P. R. Co., 59 Iowa 192, which was an action brought to recover damages for the killing of two colts, at the close of plaintiff's testimony the court directed a verdict for the defendant. The ground of the complaint was the insufficiency of the gate. Shortly before the animals in question were killed, some man passing saw a calf attempting to crawl through the opening in the gate made by a broken board. After a recital of these facts this court said:

"We think if the court had submitted this case to the jury on the evidence, and there had been a verdict for the plaintiff, it would have been its duty to have promptly set the verdict aside as being wholly unsupported by evidence. In order to have found a verdict for the plaintiff the jury would have been required to have imagined that one of the colts performed exactly the same feat which the calf executed the day before, and without any person being present to assist it by frightening it into making the struggle which opened the gate. This will not do; verdicts must have evidence to support them and must not be founded upon mere theory or supposition."

Considering the evidence in the case at bar in the light of the statement of the court in the Bothwell case that "verdicts must have evidence to support them and must not be founded upon mere theory or supposition," we fail to find any evidence in this record that would support the verdict which was returned. The gate which was furnished was properly constructed and properly maintained. There is no evidence as to how the gate happened to be open. The last person to use the gate was the appellee. There was no dispute as to the possibility of fastening the chain onto the fence wire attached to the post, and no dispute but that the gate could be fastened with the No. 9 wire which was also attached to the gate. There is no evidence in the record whether the mules did escape through the gate or not, except the circumstantial evidence that the gate was found open the next morning. There was no evidence that stock ever opened the gate before, or since, the day that the mules were found dead on the right of way. There is no evidence in the record but that some third person might have opened the gate, or failed to fasten it properly. The last time the gate was used was on the after-

noon before the mules were found dead. The appellee was the person who closed the gate at that time, and he says that he fastened it. Clearly it seems to us that the appellee has not made out a prima-facie case, and that the court should have directed a verdict in favor of the appellant at the close of the appellee's testimony.

The verdict of the lower court, is, therefore, reversed, and the cause remanded.—Reversed and remanded.

KINDIG, C. J., and STEVENS, ANDERSON, and KINTZINGER, JJ., concur.