## MARY C. WILLETTS v. R. J. JEFFRIES.

*Error from Leavenworth County.*

On the 18th of March, 1868, the Legislature passed a new act entitled "An act providing for the maintenance and support of illegitimate children," and at the same time repealed the old act of that title:  *Held*

1. BASTARDS: MAINTENANCE OF.—That the father of an illegitimate child, begotten under the old act, but born under the new act, may be compelled to contribute towards its support, by a prosecution under the new act.

2. ID: PROCEEDINGS: PARTIES.—The proceedings may be prosecuted by the mother of such child, if she is a single woman when she commences such prosecution, although she may have been a married woman when the child was born.

The facts of the case are as follows :  At the May term, 1869, of the district court, Leavenworth county, Kansas, this cause came on for a hearing on a demurrer to the petition filed herein in proceedings under the bastardy act, which demurrer was sustained and judgment entered for defendant, to which plaintiff excepted.

The petition alleged that the child was begotten in August, 1867, and was born in May, 1868; that defend-

ant was the father; that Mary C. Willetts, the relator, was married in March, 1868, and was divorced in December, 1868; that these proceedings were commenced in February, 1869.

The court sustained the demurrer on the ground that the relator must have been an unmarried woman at the time of the birth of the child, as well as at the time proceedings were commenced. Exceptions were taken. To reverse this judgment the case is brought to this court.

*D. J. Brewer*, for plaintiff in error.

*Green & Foster*, for defendant in error.

*By the Court*, VALENTINE, J.

This is a proceeding under the act "providing for the maintenance and support of illegitimate children."

In August, 1867, the relator became pregnant with a bastard child, of which the defendant was the father. In March, 1868, she married another man; in May, 1868, the child was born; in December, 1868, she was divorced from her husband, and in February, 1869, she commenced this proceeding.

When the child was begotten, the relator was a single woman; when the child was born she was married; and when she commenced this proceeding she was again a single woman.

When the child was begotten, any mother of a bastard child, married or single, under the law then in force, could commence this kind of proceeding, [*Comp. Laws*, 595, § 1,] but afterwards, to-wit: on March 18th, 1868, this law was changed so that only an unmarried woman could commence such proceeding. [*Gen. Stat.*, 516, § 1.]

It will undoubtedly be conceded that the relator had a right to commence this proceeding at any time before the

18th of March, 1868, whether she was married or single; but it is contended by the defendant that if she was married before the 18th of March, 1868, that on that day the new act barred her right to commence this proceeding; and that if she was not married until after that day, then, when she did get married, her marriage, under the new law, barred her right to commence this proceeding. It will be conceded by the relator, that while she was a married woman her right to commence this proceeding was suspended; but more than this is claimed by the defendant. He claims that her said right was absolutely and forever barred.

The defendant claims that the old law was absolutely repealed, and that the new law cannot apply to this case, for if it does it is an *ex post facto* law, and disturbs vested rights, and the reason he urges for this claim is, that the only act of his (the begetting of the child) upon which this whole proceeding is founded, was performed before the new law was passed by the legislature.

It seems scarcely necessary for us to say that this is not an *ex post facto* law, for such laws relate to criminal proceedings, and not to civil proceedings, as this does. It is true that this action is prosecuted in the name of the state, on the relation of the prosecuting witness, and the remedy is quite stringent, but in every other particular, from the commencement to its close, it is essentially a civil action.

The object of the law is not to punish the defendant for his illicit intercourse with the mother of the bastard child, for such offenses are fully provided for in other statutes; but the object of the law is to enforce, by a stringent remedy, that moral obligation resting upon every father to support his own offspring.

Neither do we think that this law, if applied to this

case, disturbs vested rights. It is a general rule that no one can have a vested right in a mere remedy, so as to prevent the legislature from changing or modifying such remedy, or even giving a new remedy. The remedy given by the new law differs but little from that given by the old law. At the time the old law was repealed and the new law passed, the following statute was in force, to-wit: "The repeal of a statute does not revive a statute previously repealed, nor does such appeal affect any right which accrued, any duty imposed or penalty incurred, nor any proceeding commenced under or by virtue of the statute repealed." *Comp. Laws*, 837.

The defendant claims substantially as follows: The relator had no vested right in the remedy given to her by the old law, and therefore the legislature could and did abrogate such remedy, when they repealed said law. But he (the defendant) had such a vested right in said remedy, that he could be tried by no other; that the legislature could not change the said remedy so as to affect the defendant, and the attempt to do so wholly released him; or in other words, the new law was valid enough so far as it took away the remedy already existing in favor of the relator, but void when it attempted to give her a new remedy. If this is sound doctrine, then the law that is in force at the time a child is begotten must forever remain the law that shall govern the relations between that child and its parents; and any attempt on the part of the legislature to change such relations, or to impose new duties, or new liabilities on the father or the child, is futile and void. All legislation to be valid must act prospectively upon parents whose children are begotten after the law takes effect, and never retrospectively (if it is proper to use the word in this connection) upon parents whose children have already been begotten. And if the

law is changed, one parent may sustain a very different relation toward his children, from that of some other parent whose children have been begotten at some different time from his. In fact the relation between the same parent and his older children, may be very different from the relation between the same parent and his younger children. Insuperable difficulties and interminable confusion must necessarily be the result of such a doctrine. Courts could not administer the same equity and justice to all fathers alike, and to all children alike: but in order to know what the rights of each parent and each child are, they must look back ten, fifteen, or twenty years to see what the law was about nine months before the child was born; and if through some mischance in advertence or fraud this law had been repealed, they would find no law governing the relation between that parent and child; no law fixing their mutual duties and liabilities. If the foregoing is sound doctrine, people should no longer indulge in the misapprehension, that the legislature have complete control over the domestic relations; the legislatures of the different states should quit passing, or attempting to pass laws for the government of the domestic relations, and particularly they should stop passing laws (as has been done in some of the states) requiring children and grandchildren to support their parents and grand parents, for it is clear that no child or grandchild ever had anything to do with bringing his father or grandfather into the world. But it is claimed that by virtue of this proceeding the property of this defendant is taken from him and given to another person. But it is taken by process of law, and the defendant has his day in court. If the defendant refuses to fulfill a legal and moral obligation, the state has a right to take his property and fulfill it for him.

Beside the right of the state to take private property for public use under the right of eminent domain, the right of taxation and the right to assess fines and forfeitures for crimes, the state may also take the private property of one individual, and transfer it to another, whenever in equity and good conscience the former has no right to with-hold it from the latter, or to enable the state to fulfill some moral obligation resting upon such individual which he refuses to fulfill. Thus the state may take the private property of an individual to fulfill his contract, to pay his debts, or to make compensation for injuries to person, reputation or property, which he has caused; or to support his wife or children when he refuses to do so.

But of course this must all be done through the intervention of the courts; and where it is so done no vested right is disturbed. In fact a party cannot have a vested right to do wrong. If a case can be found where any one has ever been permitted to obtain a vested right to ignore the fundamental principles of morality and of natural justice, we shall be surprised.

The defendant also claims that the relator could not commence this proceeding because she was a married woman when the child was born. Section one of the statute in force when this proceeding was commenced reads as follows: "When any unmarried woman who has been delivered of, or is pregnant with a bastard child shall make a complaint thereof," etc., etc. [*Gen. Stat.*, 516.] It is clear from this statute that the woman who makes the complaint must be an unmarried woman at the time she makes the complaint, but there is nothing in the statute that requires that she should have been an unmarried woman at the time the child was begotten or born. The plain and obvious object of the statute would

preclude any such uncharitable construction. The object of the statute is to protect the innocent child from destitution, and society from the burden of its support. A moral obligation rests upon every father (as well as every mother) to support his own offspring, and it would be strange if the statute can be so construed as to relieve any father, and particularly this class of fathers, from this moral obligation. A married woman gives birth to a bastard child begotten in fornication or adultery. She is divorced from her husband, perhaps for that cause alone. She is thrown upon society, destitute, disgraced and ruined, and shall her guilty paramour go free, symply because she was a married woman when the child was born? Would it not be more in consonance with the dictates of natural justice for the partner of her guilt to be required to contribute his share towards the support of their innocent offspring? It would be strange if such is not the law. Strange, indeed, if this class of bastards, though small, is to be thrown upon society entirely destitute and unprovided for, and the guilty father go free.

The judgment of the court below is reversed and the cause remanded, with the instruction that the demurrer to the petition be overruled.

All the justices concurring.