SCHOOL DISTRICT No. 13 v. THE STATE OF KANSAS, *ex rel.*, &c.

DIVISION OF SCHOOL DISTRICTS; *Apportionment of Property; Time.* On August 29th, 1871, the superintendent of public instruction of Pottawatomie county formed a new school district from territory previously belonging to School District No. 13 of said county, and designated said new district as District No. 63. Everything pertaining to the formation of said new district was regular, except that the superintendent did not, at the time of such formation, apportion the amount of the property to which each district was entitled. The school-house and other property remained in the old district. Afterward, and on March 25th 1872, the superintendent did apportion said property, and in the apportionment determined that School District No. 13 should pay the new district the sum of $131.10 as its proper proportion: *Held,* that the apportionment is valid, notwithstanding it was not made at the time the new district was formed, but was made nearly seven months afterward.

*Error from Pottawatomie District Court.*

MANDAMUS, brought in the name of *The State* by *School District No. 63*, to compel the school-district board of *School District No. 13* to levy a tax on the property of the district last named to pay the sum apportioned to District No. 63 as its proportion of the property of original Dis-

trict No. 13.   The district court, at the February Term
1873, gave judgment awarding a peremptory mandamus,
and *District No. 13* brings the case here on error for review.

*Case & Putnam*, and *R. S. Hick*, for plaintiff in error:

District No. 63 was formed under the law of 1868, Gen.
Stat. 926, §§ 50, 51.   Under these sections the superintendent
was required, at the *time* of forming such new district, to as-
certain and determine the proportion of the value of the
property justly due the new district.   Under § 51 the parties
could have appealed at any time, if they were aggrieved.
They were not aggrieved by the *division* of the territory, and
did not appeal.   Under § 15 of said act, p. 916, the superin-
tendent gave the notice of the first meeting.

The superintendent on the 25th of March 1872, four days
after the law of 1872 (p. 372, §§ 1, 2,) took effect, ascertained
and determined the proportion of the value of the property
due the new district.   When this was done there could be no
appeal, because by § 2, ch. 185, · laws of 1872, the appeal
must be taken within 10 days from the time of posting the
notices of its formation, which was done six months before
the action of the superintendent as to the distribution of the
property, and the law of 1868 (§ 51, supra,) was repealed by
§ 3 of said ch. 185, laws of 1872.

As to the *time* for doing an act required by statute, the
court has no *dispensing* power. (2 Hill, 372.)   The nature
of the act to be performed, and the language used in the sec-
tion, show that the designation of the time was intended as a
limitation upon the power of the officer.   There is nothing
in the act that justifies the inference that the valuation could
be made at any other and subsequent time.   The language is
imperative, that it shall *then* be done, or not done at all.   The
rule, "Thus the law is written," commends itself to the good
sense of every lawyer, both for brevity and solid logic.   It
is dangerous to attempt to be wiser than the law, and when
its requirements are plain and positive, the courts are not
called upon to give reasons why it was enacted: 5 Mass.,

557; 9 Mo. 878. It is admitted there are cases when the requirements may be deemed directory. But it may be safely affirmed, that it can never be when the act, or the omission of it, can by any possibility work advantage or injury, however slight, to any one affected by it. In such case it can never be omitted: 4 McLean, 213; 22 Vt. 388; 9 La. 546; 4 Hill, 99; 3 Barb. 343; 20 Wendell, 249; 21 Pick. 64; 2 Gibbs, 498.

Even if it were possible to construe this valuation part of the section into a *directory* clause merely, before the repeal of the appealing section, how could it be so considered after that, when such construction would leave the district at the mercy of the superintendent, when he could say, "The district has now no appeal and I can do as I please"—for if his finding is to have the force of a judgment, and he can divide the territory and wait until the legislature has repealed the right to an appeal from his decision, and then make a valuation, which is conclusive, it gives him the power to plunder one district for the benefit of another.

*Merritt & Jeffries,* for defendant in error:

It was the duty of the county superintendent, upon the formation of the new school district, to ascertain and determine the proportion of the value of the school-house and other property retained by District 13 justly due to District 63; and upon his failure and refusal, or refusal to perform such duty, mandamus would lie against him to compel the performance of this act specially enjoined as a duty resulting from his office: and if he could be compelled by mandamus to perform such act, he could perform it voluntarily.

The refusal or neglect of the county superintendent to make the apportionment as provided by § 50, ch. 92, Gen. Stat., would not give District 63 the right to appeal to the board of county commissioners. Their only remedy would be by mandamus to compel the superintendent to make the apportionment. The county board would have no power or authority to take any action in relation to the apportionment.

They could only inquire into the grievances of any person or persons who claimed to be injured in the formation or alteration of the district, which can refer to nothing but the territory of the district. The language of § 50 is very clear, and the apportionment of the property is no part of the formation or alteration of the district. If it is, the formation or alteration is not complete until the apportionment is made. If it were held, that to make the apportionment by the county superintendent valid it must be done at the time of the formation or alteration of the district, then the superintendent could easily defeat the new district from its share of the school property retained by the old district. If the apportionment had been made by the superintendent at the time of the formation, and District No. 13 was injured or wronged by the action of the superintendent, its remedy was not by appeal to the county board, for the law gives that board no authority or power to interfere with or regulate the apportionment of the property. This power and authority rests entirely with the superintendent. The legislature has vested him with this power, and if it is too great it is for the legislature and not for the courts to apply the cure.

The opinion of the court was delivered by

VALENTINE, J.: On August 29th 1871 the superintendent of public instruction of Pottawatomie county formed a new school district from territory previously belonging to School Dist. No. 13 of said county, and designated said new district as District No. 63. Everything pertaining to the formation of said new district seems to have been regular, except that the superintendent did not, at the time of such formation, apportion the amount of the property to which each district was entitled. The school-house and other property remained in the old district. Afterward, and on March 25th 1872, the superintendent did apportion said property, and in the apportionment determined that School District No. 13 should pay the new district the sum of $131.10 as its proper proportion. The only question now presented to us for consideration is,

whether said apportionment is void, or valid.   We think it
is valid, although there are some very strong reasons tending
to lead to a different conclusion.   The objection to the appor-
tionment is, that it was not made at the time of the creation
of the new district, and this is the only objection.   Of course,
under the law it should have been made at the time of the
creation of the new district. (Gen. Stat. 926, § 50.)   But
does its validity depend upon its being made precisely at that
time?   Is time of the essence of the law, in this respect?
We think not.   It is fair, and just, and equitable, when a
school district is divided into two new districts, that each
should have its fair proportion of the value of the property
belonging to the old district at the time of the division.   Or
what is the same thing, it is fair when a new district is carved
out of an old one that the new district should have its fair
proportion of the property or value thereof which belonged
to the old district at the time the new one was created.   And
this fairness, equity and justice we think is more of the
essence of the law, than mere time in making the apportion-
ment.   Will it be claimed that the new district must lose its
proportion of the property, or the value thereof, if the super-
intendent should for a single day after creating the new dis-
trict fail or neglect to make the apportionment?   If neither
of the districts, nor any person having any interest in either
of the districts, has any right to appeal from the action of
the superintendent in making or failing to make any appor-
tionment, then there would seem to be but little reason for
requiring that the apportionment should be made on any
particular day, provided it be made within a reasonable time
after the new district is created.   And the statute (Gen. Stat.
926, § 51; Laws of 1872, p. 372, § 2,) does not in terms
seem to give the right of appeal to either of the districts as a
corporate entity, but merely to some *person*, or *persons*, who
shall feel aggrieved.   The word "person," or "persons," as
used in the statute, may however include the corporation as
well as real persons, for the corporation itself is in one sense
a person, an artificial person.   And the right of individual

persons to appeal may be confined to *personal* grievances alone, and may not be extended to grievances which directly affect only the district as a corporation, and which indirectly affect all the individuals alike, one as much as another. (As to private individuals championing the rights of the public, see *Bridge Co. v. Wyandotte County*, 10 Kas. 326, 331, and cases there cited; *Miller v. Town of Palermo*, 12 Kas. 14.) Besides, a question may be raised under the statute, whether the right to appeal extends merely "to the formation or alteration of a school district," and no further, or whether it extends as well to all matters incidental "to the formation or alteration of a school district." For the purpose of this case we shall assume that the right of appeal exists, and has existed to the fullest extent ever since said new district was created. It would seem unreasonable that the legislature should not give an appeal in cases of this kind. And with a liberal construction of their language, probably they have given it. Then, if we are correct so far, we think it follows, that the superintendent, after he created said new district, had the right, at any time, and of his own volition, to make said apportionment; that the new district had the right at any time after the failure to make said apportionment to compel him to do so by an action of mandamus; that any person or persons feeling aggrieved by such failure had a right to appeal to the board of county commissioners, (Gen. Stat. 926, § 51,) and after the superintendent made the apportionment any person or persons who felt aggrieved thereby had a right to appeal. If any right to an appeal from an apportionment has ever existed, it is because the apportionment is incidental to the creation of the new district and the alteration of the old. And if the apportionment may be made at any time after the new district has been created, it is also because of its connection with creation of the new and the alteration of the old. And therefore, as the right to make the apportionment follows (whenever made) as an incident to the creation and alteration of the two districts, the right of appeal also follows (provided it exists in any case of

apportionment,) as incidental to such creation and alteration, and may be exercised by any person feeling aggrieved by the apportionment whenever the same is made. If there should be any fraud in the apportionment, we should also think that the district defrauded would have a remedy, either as plaintiff or defendant, by a proceeding in the nature of a bill in equity.

With reference to taking an appeal from said apportionment, it has been said that the law was so amended in 1872, (just four days before the apportionment was made) that an appeal would be impossible in this particular case. (Laws of 1872, pp. 372, 373, §§ 2, 3.) This may be true, if the law of 1872 is to govern; but under § 1, of the act concerning the construction of statutes, (Gen. Stat. 999, § 1, sub. 1,) we think the law of 1872 would not govern in this case, but that the provisions of the previous laws would govern. *Willetts v. Jeffries,* 5 Kas. 473; *Gilleland v. Schuyler,* 9 Kas. 569; *The State v. Boyle,* 10 Kas. 113; *Morgan v. Chappel,* 10 Kas. 224; *The State v. Crawford,* 11 Kas. 32; *Jenness v. Cutler,* 12 Kas. 500, 511, 512; *Ayers v. Probasco,* 14 Kas. 175.

The judgment of the court below is affirmed.

All the Justices concurring.