ANN C. CHASE v. THE ATCHISON, TOPEKA & SANTA
FE RAILWAY COMPANY.

No. 13,852.    (79 Pac. 153.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Injury to Passenger—Demurrer to Evidence.* In
an action against a railway company for damages by reason of
the ejection from one of its trains of a person claiming the
rights of a passenger, the petition appeared to be framed on
the theory that a right of recovery rested in tort for the wrong-
ful act of the conductor in expelling plaintiff from the train.
The petition, however, contained allegations of fact sufficient to
show that the railway company violated its contract of carriage
entered into with the plaintiff, which averments the evidence
tended to sustain. The railway company did not demur to the
petition for misjoinder of causes of action, nor move to strike
from it irrelevant and redundant matter, but answered. *Held,*
that it was error to sustain a demurrer to plaintiff's evidence.

2. —————— *Petition—Surplusage.* The allegations of the petition
in this case respecting the tortious acts of the conductor may be
treated as surplusage.

Error from Jefferson district court; MARSHALL GEP-
HART, judge. Opinion filed January 7, 1905. Re-
versed.

STATEMENT.

THIS was an action brought by plaintiff in error,
who was plaintiff below, against the Atchison, To-
peka & Santa Fe Railway Company to recover dam-
ages for ejection from one of its trains while she was
on her way from Pittsburg, Kan., to Chicago.

Plaintiff in error bought a ticket at Madison, Wis.,
for passage from that city to Pittsburg, Kan., and re-
turn, over the line of the Chicago & Northwestern
Railway to Chicago, and from Chicago to Pittsburg,
Kan., over the line of defendant in error. On arriv-
ing at Chicago from Madison she was given a ticket
by the agent of the Santa Fe company to Pittsburg,

with a coupon order attached thereto which, when presented to the agent of defendant in error at the latter town, entitled her to a return ticket to Chicago, to be furnished by the Santa Fe company.

The petition contained the following allegations :

"That the plaintiff on March 4, 1902, purchased, and paid for, from the ticket agent of the Chicago & Northwestern railway at Madison, Wis., a ticket for her passage over the said Chicago & Northwestern railway to Chicago and return, and, as a part of said journey from Chicago to Pittsburg, Kan., over the line of the defendant, and return to Chicago thereon ; that on arriving at Chicago on said day she was given by the agent of the defendant a round-trip ticket over the line of the defendant to Pittsburg, Kan., and return by way of Kansas City ; that she was safely carried on said journey and ticket to Kansas City, Mo., over the line of defendant, and at Kansas City, by the advice of an agent of defendant, completed her journey to Pittsburg over the Frisco line, the train of defendant being detained and late ; that the plaintiff, after remaining in Pittsburg, on April 16, 1902, went to the agent of defendant at its station in said city of Pittsburg, Kan., and presented to said agent her ticket over the Chicago & Northwestern railway, calling for a passage from Chicago to Madison, and the remainder of her ticket over the line of the defendant, calling for a passage from said city of Pittsburg, Kan., to Chicago, Ill. ; the said ticket, as presented, required the plaintiff to present it, and required the said agent of defendant, if presented in time and by the original purchaser, to stamp it, and the ticket agent was thereupon to supply and give to the plaintiff a proper ticket for her passage over the line of the defendant from said city of Pittsburg, Kan., to said city of Chicago ; that the said agent examined both of said tickets and informed the plaintiff that he could not find her ticket for the remaining part of the journey, and afterward informed her that the would stamp the tickets and this would be sufficient for her to make such passage and journey ; that there-

upon he stamped, as plaintiff believed, both of said tickets, and at plaintiff's request checked her trunk as baggage from Pittsburg to Chicago, over the train of defendant leaving Pittsburg about ten o'clock A M. of said day for Chicago, and upon which the plaintiff intended to journey on said ticket to Chicago; that upon the said train of defendant arriving, bound east and to Chicago, the plaintiff took passage; that she had with her a grip or portmanteau weighing 75 pounds, and another 10 pounds; that the plaintiff is a married woman, 53 years of age, and then weighed 187 pounds; that after said train had proceeded on its way over one mile and a half from the city of Pittsburg the conductor of said passenger-train of defendant, then in charge of said train and in the employment of the defendant, called upon the plaintiff and demanded her fare; that the plaintiff thereupon presented to him the ticket, or portion of the ticket, issued and given her at Chicago by the agent of defendant at that place, and stamped by its agent at Pittsburg as aforesaid, and which he had informed her would be sufficient for her to make said journey; that thereupon the said conductor informed her that she could not ride on such ticket; that she must pay fare or be put off; that the agent at Pittsburg should have given her a ticket for her journey. . . .

"The plaintiff avers that said ticket had not expired; that it was still in force; that she was and is the original purchaser of said ticket; that at no time has any question or objection been made or taken by defendant that it had expired, or that she was not the purchaser; and she further avers that she was entitled to have, and to be given, a proper ticket for said journey; and the plaintiff further avers that at no time had she knowledge of what her various tickets called for, or how they read, and did not understand them but depended wholly and solely upon the advice and information she received from said agents of the defendant. . . .

"And the plaintiff further avers that said injuries were wholly occasioned and caused by the brutal, ma-

licious and wanton acts and gross negligence of the defendant and its agents, conductor, and servants, as follow :   In the negligence of defendant in failing to supply to the plaintiff a proper ticket; in failing so to instruct its agents at Chicago and Pittsburg that the plaintiff would have been provided with a proper return ticket on her proper application to its agent at Pittsburg therefor ; in the negligence of the ticket agent of the defendant at said city of Pittsburg in not supplying the plaintiff with a proper ticket upon her demand and request, he then well knowing that it was his duty to do so, that she could not ride without it, and he then having the tickets, or forms of tickets, by which he could have supplied her ; in the gross negligence of said ticket agent in stamping her two tickets and then falsely informing her that she would thereupon be entitled to ride ; in the negligence of said ticket agent in not taking some action or step by which the plaintiff could have ridden on said train and not be put off, and all which he failed to do, the said ticket agent then well knowing that she intended to start, and could not ride on said ticket, and that she would have trouble ; in the negligence of said conductor of said train, and in his brutal, wanton and malicious conduct in putting the plaintiff off—circumstanced as she then was, in age, weight, and burden—on the side of the track, alone and unassisted, and compelling her to find her way back as best she could, when he at the time knew it was the fault of said ticket agent at Pittsburg, and that the plaintiff was entitled to have had a ticket for a ride on said train ; and in his further gross negligence and brutal, wanton and malicious conduct in so putting her off with such knowledge on his part, without asking by telegraph or otherwise for instructions, after the plaintiff had importuned him so to do.''

Defendant below filed an answer denying generally in the first paragraph all the allegations in the petition.   In the second it pleaded :

''That under the provisions of said contract of

transportation made by said defendant with said plaintiff the paper or contract given her was not a ticket, and did not entitle her to return thereon from Pittsburg to Chicago, but provided in plain terms that the same would entitle her to a ticket upon presentation at the proper time to the agent at Pittsburg, Kan.; that the plaintiff well knew, or ought to have known, and could have known by the exercise of ordinary care and diligence, that she was not entitled to ride upon the trains of defendant's road from Pittsburg to Chicago upon the paper given to her which she presented to the conductor; that when said paper was presented to the conductor, within a very short distance from the station at Pittsburg, Kan., and within a very short distance from the hotel, the conductor advised her that it was not a ticket, and that he could not carry her upon that paper, and that she should return and procure a ticket from the agent, and thereupon, without any objections upon her part, the train was stopped and she got off of said train, and upon presentation of said order for a ticket was furnished with a ticket from Pittsburg to Chicago, and on the next day and the next train presented said ticket and was transported by said defendant company from Pittsburg, Kan., to Chicago, Ill."

Mrs. Chase testified:

"I went to the depot, as I was instructed to do when I left Madison, to have my ticket over the Northwestern stamped and have my tickets to return on. I handed in my exchange coupon, which I have since found out was an exchange coupon—I did not know it was then. I handed that in for my return passage, and they took it and looked around a while. . . .

"He looked at this piece of ticket I had left, and he said, 'It is not a ticket'; and I said, 'If it is not a ticket I should have a ticket; I paid my money for it and should have a ticket to return on.' Then he picked up my other ticket, on the Northwestern road, and he said, 'This must be your ticket home.' I said, 'I suppose that is only on the Northwestern road.' He said, 'This must be the ticket that carries you

home.' I thought he knew more about it than I did, because I am not skilled in railroad laws or their railroad ways, and took it for granted it was my ticket home. He stamped it. I did not see him stamp it.

"I said, 'I don't want any trouble about it. I don't want to shake when I see the conductor coming.' Then when I went out to get my trunk checked I could not find the baggage agent and went right back to this very same man that fixed my ticket. He took out two pasteboard checks and fixed them, and I took them out and the baggageman put one on my trunk, and I put one in my pocket-book. I supposed everything was all right.

"Ques. Did he know you were going to take that train? Ans. I suppose he knew it.

"Q. What did you say he did with these two pieces of paper, the one over the Northwestern and this piece—put them in an envelope? A. Put them in an envelope and handed them to me, and I supposed that was all that was necessary.

"Q. What was his statement to you about this ticket; what did you say was his statement to you? What happened; what did you first present to him? A. I presented to him my two tickets—on the Chicago & Northwestern, and Santa Fe.

"Q. And what then do you remember of saying to him? A. I handed them in and asked him to fix my tickets for me to return on.

"Q. When the train came did you take passage? A. I did.

"Q. State just what occurred on that passage, and when it terminated, and all the circumstances about it, in your own way. A. I got on the train and started. When the conductor came through I handed my ticket. I handed him out both tickets. He handed me back the Northwestern ticket, and handed me back the other and said it was not a ticket; that 'The agent should have given you a ticket. This is only an order for your ticket. He should have given you a ticket for this.' He said, 'You will have to go back to the depot.' I thought he was going to pull

the train back.    When he mentioned I would have to go back to the depot I said to him, 'Then will you back the train?'    I thought we had not gone so very far and was pulling out of the city.    He said, 'Oh, no.'    At that he took up my grips and started out, and said, 'You will have to get off,' and started on. He took my grips and started for the door, and I followed after him.    He said to the young brakeman, 'Step off and help the woman down.'    He and the conductor each took an arm and helped me off, and set my grips down there.    He said, 'You will have to get off and get your tickets and come to-morrow.'"

J. W. Glick, a son-in-law of plaintiff below, was present with Mrs. Chase at the Sante Fe station, in Pittsburg, when the latter started on her return to Chicago.    He testified that the agent was sitting in the opposite corner of the room at the time Mrs. Chase was arranging with the man at the ticket window for her return passage ; that she handed to the clerk her Chicago & Northwestern ticket from Chicago to Madison, and also a ticket, or an order for her return ticket, from Pittsburg to Chicago.    He stamped, one and may have stamped both.    He said something to the effect that the ticket she had was not a ticket, but an order for a ticket.    He placed the tickets in an envelope and handed them to her.    He then gave witness a check for her trunk.

When the plaintiff below rested her case a demurrer to the evidence, filed by the railway company, was sustained by the trial court on the ground that no cause of action had been proved.

*Waters & Waters*, for plaintiff in error.

*A. A. Hurd*, and *O. J. Wood*, for defendant in error.

The opinion of the court was delivered by

WILLIAM R. SMITH, J.: The ruling of the court below in sustaining a demurrer to the evidence is defended by counsel for the railway company on the ground that the cause of action set out in the petition was not for the breach of a contract of carriage, but for a tort only. They rely on decisions of this and other courts which hold that a person traveling on a railway-train without a ticket entitling him to ride may be regarded by the conductor as a trespasser, and may be ejected, no unnecessary force being used, without any liability on the part of the railway company therefor. (See *A. T. & S. F. Rld. Co. v. Long*, 46 Kan. 260, 264, 26 Pac. 682; *A. T. & S. F. Rld. Co. v. Gants*, 38 id. 608, 17 Pac. 54, 5 Am. St. Rep. 800; *Rolfs v. Railway Co.*, 66 id. 272, 71 Pac. 526, and cases cited.) There can be no doubt that the principle stated is settled by the great weight of authority. (*Mosher v. St. Louis &c. Railroad Co.*, 127 U. S. 390, 8 Sup. Ct. 1324, 32 L. Ed. 249; Taft, J., in *Pouilin v. Canadian Pac. Ry. Co.*, 52 Fed. 197, 3 C. C. A. 23, 17 L. R. A. 800; Ell. Rail. § 1594; Hutch. Carr. § 580*j*.) The application of this rule would defeat the plaintiff below, unless it can be said that the averments of the petition are sufficient to constitute a cause of action for breach of contract to carry her as a passenger.

It must be remembered that the petition was not attacked by demurrer for misjoinder of causes of action, and that the defendant below did not move to strike from it irrelevant and redundant matter. If two causes of action were improperly joined, the fact that they were blended and commingled in one statement did not deprive defendant below of the right to

demur for misjoinder. (*Benson v. Battey, ante,* p. 288, 78 Pac. 844.) To reach a defect of this kind, appearing on the face of the petition, a demurrer was the proper method of attack. (*Lyons v. Berlau,* 67 Kan. 426, 73 Pac. 52.)

Defendant below, after answering, was content to proceed with the trial of the cause against the averments of a petition which, if objected to properly and in time, might have driven the plaintiff to elect whether she based her right of recovery on contract or tort. No defects were pointed out while plaintiff below was in a position to amend. Under these circumstances, if sufficient facts can be found to constitute any cause of action it is the duty of this court to sustain the petition. (*Bright v. Ecker et al.,* 9 S. Dak. 192, 68 N. W. 326. See, also, *Seaton v. Scovill,* 18 Kan. 433, 21 Am. Rep. 212, note, 26 Am. Rep. 779 ; *O'Connell v. Rosso,* 56 Ark. 603, 20 S. W. 531 ; *Connyers v. The Sioux City & Pac. Ry. Co.,* 78 Iowa, 410, 43 N. W. 267 ; *Central Railroad Co. v. Pickett,* 87 Ga. 734, 13 S. E. 750 ; *Dailey v. Houston,* 58 Mo. 361 ; *Hewitt v. Brown,* 21 Minn. 163.)

Under the code a statement in a petition of the facts constituting a cause of action, set forth in ordinary and concise language, without repetition, is sufficient. (Civil Code, § 87 ; Gen. Stat. 1901, § 4521.)

The allegations respecting the tortious acts of the conductor may be treated as surplusage. (*Bernhard v. City of Wyandotte,* 33 Kan. 465, 467, 6 Pac. 617. See, also, *Campbell v. The Mo. Pac. R'y Co.,* 121 Mo. 340, 25 S. W. 936, 25 L. R. A. 175, 42 Am. St. Rep. 530 ; *Oglesby v. Mo. Pac. R'y Co.,* 150 id. 137, 51 S. W. 758 ; *Radcliffe v. The St. L. I. M. & S. Ry. Co.,* 90 id. 127, 2 S. W. 277.)

The petition avers that plaintiff below paid her fare

to the Santa Fe company for her passage from Chicago to Pittsburg and return, and was given a ticket by the agent of defendant in error at Chicago which required its agent at Pittsburg, when it was presented, to give her a proper ticket to return.   It alleged also :

"That the said agent, at Pittsburg, examined both of said tickets and informed plaintiff that he could not find her ticket for the remaining part of the journey, and afterward informed her that he would stamp the tickets, and this would be sufficient for her to make such passage and journey ; that thereupon he stamped, as plaintiff believed, both of said tickets, and at plaintiff's request checked her trunk as baggage from Pittsburg to Chicago over the train of defendant."

It is further alleged that she was entitled to be given a proper ticket for her journey, and that she depended wholly upon the advice and information received from the agents of the railway company. Coupled with the averment that plaintiff below was afterward expelled from the train which she had taken on the assurance of the agent that the tickets given to her by him were all-sufficient, there was clearly a breach of the contract to carry, for which the railway company was liable.   (Hutch. Carr., 2d ed., § 580*h*.)

Plaintiff below contracted for her passage from Pittsburg to Chicago, paid the rate charged therefor, and was entitled, on demand of the company's agent at Pittsburg, to receive a proper ticket, evidencing her right to ride as a passenger on its train.   Sufficient evidence was introduced to justify the jury in finding that defendant below had violated its contract to carry plaintiff as stipulated in her ticket. The ticket, a copy of which is set out in the answer of the railway company, provided that the purchaser within twenty-one days after the commencement of

her journey could, by presenting the exchange coupon attached to the going part of her ticket, secure a return portion by identifying herself as the original purchaser. The company was bound to furnish a return ticket on demand. Its refusal or neglect was a breach of the contract.

The person in charge of the ticket office at Pittsburg, on presentation of the order for a return ticket, attempted to perform the duty resting on the company toward plaintiff below, and on failure to find a return ticket of the form in common use stamped the order for return passage and checked the holder's baggage, giving her to understand thereby that she was entitled to ride on the evidence of a right to do so which he furnished her.

The judgment of the court below is reversed, and a new trial ordered.

All the Justices concurring.