CHARLOTTE B. DOUGLASS, *as Executrix, etc., Appellant,*
v. MARY R. LOFTUS, *Individually and as Administra-
trix, etc., et al., Appellees.*

No. 17,213.

SYLLABUS BY THE COURT.

1. JUDGMENTS—*Trespass to Real Estate—Tort—Contract.* A
   judgment for damages for a trespass to real estate where the
   tort benefited the tort feasor's estate to the full extent of the
   actual damages recovered by the injured party is not a judg-
   ment upon a tort pure and simple, but upon a cause of action
   so far contractual as to bring the judgment within the pro-
   tection of the provisions of the federal constitution against
   legislation impairing the obligation of a contract.

2. STOCKHOLDERS—*When Liability Attaches.* Where such a
   judgment was rendered against a corporation June 30, 1906,
   upon a cause of action which accrued prior to 1899, neither
   the statute of 1898 (Laws 1898, ch. 10, § 14), which took
   effect January 11, 1899, changing the remedy of a stockholder
   from a single action to an action by a receiver; nor the act of
   1903 (Laws 1903, ch. 152) repealing all provisions for en-
   forcing the liability of stockholders; nor the constitutional
   amendment of 1906 limiting the stockholder's liability to the
   amount of the stock owned by him, deprived the judgment
   creditor of the right to maintain a suit on such judgment
   against a stockholder under the statute as it existed at the
   time the cause of action accrued.

3. ——— *Same.* The right of the judgment creditor in the case
   mentioned in the preceding paragraph to maintain such an
   action is preserved by the general saving clause (Gen. Stat.
   1909, § 9037, subdiv. 1), which provides that the repeal of a
   statute shall not affect any right which accrued under it,

although no action or proceeding was commenced for the enforcement of such judgment until after the repeal of the statute.

4. STOCKHOLDER'S LIABILITY—*Revivor of Judgment Unnecessary.* The revivor of a judgment against a corporation is unnecessary in order to maintain a suit to collect the amount thereof from a stockholder. It is still evidence of the validity, character and amount of the creditor's claim.

5. LIABILITY—*Of Estate of Deceased Stockholder—Heirs.* The estate of a deceased stockholder is liable upon stock held and owned by him in the same way and to the same extent that he was liable in his lifetime. The heirs at law or devisees of a deceased stockholder are liable in a suit upon a judgment rendered against the company after the stockholder's death to the extent of the property inherited by or devised to them.

6. JUDGMENT—*Execution—Action Against Stockholder—Laches.* A judgment was rendered against a corporation June 30, 1906. Execution issued February 15, 1907, and was returned unsatisfied for want of property on which to levy. *Held,* (1) there was no unreasonable delay in the issuance of an execution; (2) the right to maintain an action against a stockholder upon the judgment accrued upon the return of the execution unsatisfied; (3) the judgment creditor had three years thereafter in which to begin an action to enforce the judgment against a stockholder; (4) the claim of a judgment creditor of the corporation against the estate of a deceased stockholder is not provable in the probate court until it has been reduced to judgment against the estate, and the limitation contained in the executors' and administrators' act has no application to such a claim.

Appeal from Leavenworth district court. Opinion filed November 11, 1911. Reversed.

*Frank Doster,* and *A. E. Dempsey,* for the appellant.

*W. W. Hooper, W. Littlefield,* and *Thomas J. White,* for appellees Clarence Ryan, Mary Drechsel and Anna Peek.

The opinion of the court was delivered by

PORTER, J.: In this suit Mrs. Douglass, as executrix of her husband's estate, seeks to recover from certain stockholders of the Leavenworth Coal Company the

46—85 KAN.

amount of a judgment against the company in favor of her husband rendered in his lifetime. The petition recites that for a long time prior to 1899 the Leavenworth Coal Company, by means of subterranean and hidden tunnels and underground workings had secretly trespassed upon and into the coal beds on the land of John C. Douglass, and had carried away and converted his coal to its own use; that in 1899 and 1900 he had brought two actions against the company for damages for such trespass and conversion; that these actions were consolidated and a trial was had, resulting in a judgment in his favor, on June 30, 1906, for sixty-seven thousand, three hundred eighty-seven and 50/100 dollars ($67,387.50) damages and costs, and that on February 15, 1907, an execution on the judgment issued against the coal company, which was returned unsatisfied.

The petition then alleges that Matthew Ryan, sr., who died on the 20th day of June, 1893, was a large stockholder in the coal company, owning nineteen hundred and fifty-three (1953) shares, of the aggregate par value of ninety-seven thousand, six hundred and fifty dollars ($97,650); that he died testate, and devised his property, including the shares of stock aforesaid, to the defendants, who are his children and grand-children; that the shares of stock constitute a part of his unsettled estate, which has not been distributed or administered. The petition further alleges that in his lifetime John C. Douglass commenced a suit in the district court of Leavenworth county on the identical cause of action herein set forth and against the same defendants or their privies and predecessors in interest, which suit was pending at the time of his death, and was afterward revived in the name of the plaintiff as executrix of his estate; that the suit so revived was thereafter, upon a change of venue, removed to the court of common pleas of Wyandotte county, where it remained pending until February 5, 1910, at which time, upon

leave of court, it was dismissed without prejudice. The present action was commenced January 28, 1910. A copy of the entry of judgment in favor of John C. Douglass against the coal company was attached to and made part of the petition. The prayer is for judgment against the administratrix as such and against the heirs and devisees for the amount of the judgment against the coal company, and that the same be charged as a lien upon the property of the Ryan estate.

The defendants filed demurrers to the petition on the ground that it fails to state a cause of action. The court sustained the demurrers; Mrs. Douglass appeals and assigns the ruling as error.

A number of reasons are advanced which, it is contended, furnish sufficient grounds for sustaining the demurrers. The main question to be decided is whether the amendment to the stockholders' liability law or its subsequent repeal defeats the plaintiff's right of recovery. To enforce the constitution as it stood previous to the constitutional amendment of 1906, the legislature enacted two provisions. One authorized a judgment creditor of a corporation to issue execution, or he might proceed by action against any stockholder; the other authorized a creditor to sue a stockholder if the corporation had been dissolved leaving debts unpaid. Under these statutes the remedy of the creditor was by a single action against a single stockholder. At the special session of 1898 the legislature, by a law which took effect January 11, 1899 (Laws 1898, ch. 10, § 14, Gen. Stat. 1901, § 1302), changed the remedy to one of a suit by a receiver against the stockholders generally in favor of the creditors generally. In 1903 all provisions for the enforcement of stockholders' liability were repealed, and at the general election of 1906 section 2 of article 12 of the constitution was amended, abrogating the double liability of stockholders, and leaving each stockholder liable only to the amount of stock owned by him. The question is whether either the statutory amendment

providing a different remedy, or the subsequent repeal of all provisions for enforcing a stockholders' liability, or the subsequent amendment to the constitution, bars the plaintiff's right to maintain this action under the statute as it existed prior to January 11, 1899. A judgment founded on a tort is not a contract, and for that reason is not protected by the provisions of the federal constitution against the impairment of contract obligations by state legislation. (*Louisiana v. Mayor of New Orleans,* 109 U. S. 285, 27 L. Ed. 936; *Chase v. Curtis,* 113 U. S. 452, 28 L. Ed. 1038; *Freeland v. Williams,* 131 U. S. 405, 33 L. Ed. 193; *Henley v. Stevenson,* 67 Kan. 4, 72 Pac. 518.)

In the case last cited the record failed to disclose the nature of the litigation which resulted in the judgment against the corporation, and whether or not any contractual liability existed between the judgment creditor and the corporation prior to the time the act of 1898 took effect, and it was therefore held that it did not appear that the creditor was entitled to pursue the remedy under the earlier statute.

The defendants claim that in the original action John C. Douglass sued the coal company for a statutory trespass; that his action was in tort, and the judgment now sought to be enforced must be classed as one for a tort pure and simple. The character of the action upon which the judgment is founded must be determined solely from what is stated concerning it in the petition in this case. Obviously it was brought under the provisions of the statute (Gen. Stat. 1868, ch. 113, § 1, Gen. Stat. 1909, § 9692) authorizing treble damages in certain kinds of trespass, since treble damages were claimed. However, the plaintiff either failed in his proof as to the allegations entitling him to more than compensation or (what seems more probable) waived all claim to damages under the statute, because it appears from the entry of judgment, a copy of which is attached to

and made a part of the petition in this case, that no such damages were allowed.  On the contrary, the court first found the actual value of the coal taken and converted and gave judgment for the value and no more. That part of the entry of judgment reads:

"The court, after hearing the evidence and argument of counsel thereon and being fully advised in the premises, finds that said defendant, as alleged in the petition, wrongfully took and converted to its own use all of the coal underlying the lots mentioned in plaintiff's petition as amended, and from under the streets and alleys adjoining said lots, tracts, pieces and parcels of ground.  That at the times said coal was taken and converted, it was of the value of sixty-seven thousand, three hundred and eighty-seven dollars."

The court then rendered judgment for the actual value of the coal wrongfully taken and converted.

Notwithstanding the adoption of the code, the substantive distinctions between actions on contract and those in tort still exist.  In cases which are often found occupying the "twilight zone" between the two forms it is difficult to determine whether they belong strictly to the one class or the other.  These are cases where upon substantially the same facts the law permits a recovery in the same action of damages for the breach of an implied contract or for the wrongful act of the defendant.

"Where a person takes and sells the property of another, the owner may elect to waive the tort and sue upon the implied contract for the value of the same; and whether he has so elected, and the nature of the action brought, are to be determined by the court from the pleadings." (*Smith v. McCarthy,* 39 Kan. 308, syl. ¶ 1, 18 Pac. 204.)

Previous to the adoption of the code the tort was waived by bringing an action in assumpsit upon the implied promise to pay.  Under the code system of pleading, whether the tort is waived is to be determined ordinarily from the facts stated in the complaint. (*Smith v. McCarthy,* supra.)  The only facts stated in

the petition which would indicate that the tort was not intended to be waived is that treble damages were claimed. The statute authorizing treble damages for certain kinds of trespass provides as follows:

"If any person shall . . . dig up, quarry or carry away any . . . mineral . . . in which he has no interest or right, standing, lying or being on land not his own, . . . the party so offending shall pay to the party injured treble the value of the thing so injured . . . or carried away, with costs, and shall be deemed guilty of a misdemeanor, and shall be subject to a fine not exceeding five hundred dollars." (Gen. Stat. 1868, ch. 113, § 1, Gen. Stat. 1909, § 9692.)

It would seem difficult if not impossible to state a cause of action under the statute entitling a plaintiff to treble damages without at the same time stating facts which would permit him to waive the tort and recover on the implied promise the actual value of the property converted.

In *Wright v. Brown,* 5. Kan. 600, the petition set up a claim for treble damages against the defendant for cutting down and carrying away trees growing upon plaintiff's land. The court refused to compel the plaintiff to elect as to whether he would proceed for the actual damages or for treble damages. It was held that the trial court ruled rightly because the petition was obviously intended for treble damages, "and was good for either, so that there was nothing to elect." (p. 603.) The code has abolished the forms of actions. While the substantive distinction between actions on contract and those in tort remain, there is not much of substance left by which to distinguish an action on contract from one in which the plaintiff upon the same statement of facts may recover on contract or in tort, and without being subject to a motion to compel him to elect which course he will take.

Whether an action is *ex contractu* or *ex delicto* can not always be determined from the character of the damages claimed, though the relief demanded has in

some cases been considered controlling. (1 Encyc. Pl. & Pr. 147, and cases cited in note 1.) It is of no importance what the plaintiff calls his action. "Under our code a plaintiff is not required to state whether his cause of action is founded upon contract or tort; and generally, if he should make such a statement, and be mistaken, the statement would be immaterial." (*Akin v. Davis,* 11 Kan. 580, syl. ¶ 6.) This necessarily follows from the provision that all that is required in a petition is "a statement of facts constituting the cause of action, in ordinary and concise language, and without repetition." (Civ. Code, § 92.)

It is well settled that where a petition contains a good cause of action for a breach of contract, express or implied, the addition of averments appropriate to a cause of action for a wrong will not change the action from contract to tort, and where a doubt exists the courts are inclined against construing the pleading as stating a cause of action for a tort. Where the petition otherwise states a cause of action on contract, the courts generally regard the averments which are appropriate to an action in tort as mere surplusage. (*Bernhard v. City of Wyandotte,* 33 Kan. 465, 467, 6 Pac. 617; *Smith v. McCarthy,* 39 Kan. 308, 18 Pac. 204; *Chase v. Railway Co.,* 70 Kan. 546, 554, 79 Pac. 153; *Railway Co. v. Hutchings,* 78 Kan. 758, 99 Pac. 230; *Delaney v. Implement Co.,* 79 Kan. 126, 129, 98 Pac. 781.) In the latter case it was held:

"In determining whether a petition states a cause of action *ex contractu* or *ex delicto,* it must be considered in its entirety, but with special reference to its prominent and leading allegations. Where the averments make it doubtful whether the action is on contract or in tort every intendment must be made in favor of construing it as an action on contract." (Syl. ¶ 1.)

In the opinion a case is cited where the action was held to be *ex contractu,* and one of the reasons stated for so holding was that an action *ex delicto* would have been barred by limitation. (*St. Louis, I. M. & S. R. Co.*

*v. Sweet,* 63 Ark. 563, 40 S. W. 463.)   This court, in
*Chase v. Railway Co.,* supra, went quite as far.   There
the plaintiff, who was a passenger, brought suit against
the company for damages for being ejected from a
train.   The petition was framed on the theory that the
right to recover was for the wrongful act of the con-
ductor in expelling her from the train, but the petition
stated facts sufficient to show that the company had
violated its contract of carriage entered into with the
plaintiff.   It was held that the action was one of con-
tract, and that the averments respecting the tortious
acts of the conductor should be treated as surplusage.
In the opinion it was stated that if the action were held
to be in tort and not on contract the plaintiff could not
recover, and the judgment which the trial court ren-
dered against her on a demurrer to the evidence in that
event would be affirmed.   The court, however, disre-
garded all the averments of the petition which were
appropriate to an action in tort; and, finding therein
sufficient facts stated to constitute a cause of action on
contract, held the other averments to be surplusage and
reversed the judgment.   The court held that she might
ignore the tortious acts of the conductor and all refer-
ence thereto in her petition and recover upon a contract
which was not in terms declared upon, but which the
law took cognizance of from the statements of fact in
the petition, from which it appeared that the relation
of carrier and passenger existed between her and the
company.

Here the tort was one which benefited the tort
feasor's estate to the full extent of the actual damages
sustained by the injured party.   In such cases, where
the recovery may be had upon either theory upon the
facts stated in the petition, and it appears that the
judgment was rendered only for the actual value of
the property converted precisely as though the action
had in fact been based upon the implied contract alone,
and as though the tort had been waived when the action

was filed, we think within the principle of the foregoing cases the action might well be held as one upon the implied contract and not as an action in tort.

At all events the judgment was not for a tort pure and simple, but upon a cause of action essentially contractual. It was for a trespass by which the wrongdoer, the coal company, had appropriated to its own use the property of another, and the cause of action was so far contractual as to bring the judgment within the protection of the federal constitution against the impairment of the obligation of a contract. Neither the statute of 1898, which took effect January 11, 1899, and changed the remedy to enforce the stockholders' liability from a single action against a single stockholder to an action by a receiver against the stockholder generally for the benefit of all the creditors; nor the act of 1903 repealing all provisions for enforcing the liability of stockholders; nor yet the change in the constitution in 1906, could deprive the plaintiff of the right to maintain a suit against a stockholder under the statute as it existed at the time the cause of action upon which the judgment is founded accrued to John C. Douglass, which the petition avers was long prior to 1899. The petition alleges facts which show that the liability of the coal company arose prior to the 1st day of January, 1899, and this was eleven days before the statute took effect changing the remedy.

The general saving clause (Gen. Stat. 1868, ch. 104, § 1, subdiv. 1, Gen. Stat. 1909, § 9037, subdiv. 1) provides that the repeal of a statute shall not affect any right which accrued under it. This has been repeatedly held to preserve rights accrued although no action or proceeding had been commenced for their enforcement. (*Willetts v. Jeffries*, 5 Kan. 470; *Jenness v. Cutler*, 12 Kan. 500, 511, 512; *Ayres v. Probasco*, 14 Kan. 175; *School District v. The State*, 15 Kan. 43, 49; *Henley v. Myers*, 76 Kan. 736, 93 Pac. 173.)

In the latter case it was applied to the holder of a

judgment rendered against a corporation in an action founded upon tort, upon which an execution had been issued and returned *nulla bona* before the repeal of the act changing the remedy from a single action to a suit by a receiver.

In *Woodworth v. Bowles*, 61 Kan. 569, 60 Pac. 331, it was held that the effect of the statute for the enforcement of a stockholder's liability is to make the relation between the creditors and stockholders contractual in its nature, and therefore within the protection of the same clause of the federal constitution. The particular statute construed there was an act which vests in receivers of insolvent banks a right of action for the enforcement of the statutory liability of stockholders, but the same principle is involved as in the present case. The liability of the corporation to the creditor in that case was on contract. Conceding that in the present case the liability was for a tort, the tort was of a character which benefited the tort-feasor's estate to the same extent that it diminished the estate of the injured party. It was a tort which the person injured might waive and recover the full amount of his loss upon a contract which the law in such cases raises by implication. We think, therefore, that the obligation of the stockholder to respond to a suit for damages resulting from the commission of a tort of this character is as fully protected by the federal constitution as though it rested wholly on contract.

In the opinion in *Henley v. Myers*, supra, the case of *Woodworth v. Bowles*, supra, is cited in support of the settled doctrine "that a corporate creditor who became such while the earlier statute was in force could not be deprived of his right to proceed thereunder by the enactment of the new law." (76 Kan. 741.) In the Henley case it was the stockholder who was claiming a vested right in the remedy and asserting that the creditor was obliged to proceed against him, if at all, under the earlier statute which had been super-

seded and which the creditor had not followed. The stockholder contended that any change in the remedy as to him was in violation of the obligation of his contract. The questions determined by the decision were that the law of 1898, substituting for all other remedies a suit by a receiver, applies to a stockholder who became such before the change in the remedy, even though the new remedy might be more efficient than the old, and incidentally more burdensome to the stockholder, so long as it involved no actual increase of his liability. It was further decided that the word "dues," as used in section 2 of article 12 of the constitution before the amendment of 1906, is broad enough to cover a judgment rendered against a corporation in an action for a tort; and that the same section of the statute which the plaintiff in this case is seeking to invoke (Gen. Stat. 1868, ch. 23, § 32, Gen. Stat. 1889, § 1192, repealed by Laws 1898, ch. 10, § 14), applies to judgments founded on a tort, as well as upon contract.

Whether the legislature might not by changing the remedy to one of a suit by a receiver, or by repealing all provisions for enforcing such liability, destroy the creditor's right to pursue the stockholder upon a judgment founded upon a tort was not before the court and was not passed upon; nor was there anything determined in that case from which it necessarily follows that such a change in the remedy or the repeal of all remedies for enforcing such a judgment against the stockholders would constitute an impairment of the obligations of any contract. We deem it wholly unnecessary to determine that question in view of the conclusion we have reached respecting the nature of the judgment sought to be enforced in this proceeding.

This disposes of the principal contention in the case. Other reasons are suggested in support of the demurrer, but few of them require extended comment. This is not a suit upon a judgment but to enforce a stockholder's liability for the debts of the corporation. Revivor of

the judgment was unnecessary.  The failure to revive it prevents its enforcement against the coal company, the judgment debtor; but it is still evidence of the validity, character and amount of the creditor's claim and *res judicata* as to all these matters in a suit to enforce the liability of the stockholder under the law as it stood prior to 1899.  (*Scroggs v. Tutt*, 23 Kan. 181, 189; *Van Vliet v. Halsey*, 37 Kan. 116, 14 Pac. 482.. The only purpose of revivor is to keep the judgment alive so that it may be enforced by execution against the "representatives, real or personal, or both, as the case may require."  (Civ. Code, § 436.)   To the same effect is the case of *Atlantic Trust Co. v. Dana*, 128 Fed. 209, 62 C. C. A. 657, involving the construction of section 436 of the civil code and the Kansas laws relating to the liability of stockholders for debts of the corporation.

It can hardly be seriously contended that the estate of a deceased stockholder is not liable upon stock owned by him to the same extent that the stockholder was liable in his lifetime.   In section 248 of volume 1 of the fifth edition of Cook on Corporations it is said:

"The estate of a deceased person is liable upon stock held and owned by the decedent in the same way and to the same extent that the stockholder was liable in his lifetime.   Accordingly, an executor or administrator of the estate of a deceased stockholder is chargeable upon the shares of the decedent to the extent of the property that comes into his hands as the personal representative of the deceased.   The cause of action against a stockholder, arising from his statutory liability, is not defeated by his death.   The action may proceed against his estate."

To the same effect is *Richmond v. Irons*, 121 U. S. 27, 30 L. Ed. 864.  See, also, *Fidelity Insurance, Trust & S. D. Co. v. Mechanics' Sav. Bank*, 97 Fed. 297, 38 C. C. A. 193, and authorities cited in a note to the same case in 56 L. R. A. 228.  Counsel for defendants practically concede this to be the law, but insist that the de-

murrers of all the defendants other than Mary Loftus, administratrix, were properly sustained. The purpose of the suit, if judgment be obtained, is to have such judgment declared a lien upon the real property of the estate and upon any undistributed portion of the personal property of the devisees. The heirs at law or devisees are personally liable for the debts of the an-. cestor to the value of the property received by them. (*McLean v. Webster,* 45 Kan. 644, 26 Pac. 10; *Rohrbaugh v. Hamblin,* 57 Kan. 393, 46 Pac. 705; *Cooper v. Ives,* 62 Kan. 395, 401, 63 Pac. 434.) In the case last cited the heir of a deceased stockholder was held liable to the extent of the property inherited by her upon a judgment rendered against the company after the stockholder's death. In *Matteson v. Dent,* 176 U. S. 521, 44 L. Ed. 571, a stockholder in a national bank died intestate. The shares in final settlement of the estate were distributed among his heirs. It was held that the stock could be followed into the hands of the distributees for the purpose of subjecting it to an assessment made for the purpose of meeting the liabilities of the bank arising out of its insolvency although the bank became insolvent subsequent to the death of the stockholder.

The judgment against the coal company was rendered June 30, 1906. Execution issued February 15, 1907, and was returned unsatisfied ninety days thereafter. John C. Douglass died February 27, 1908, after commencing suit against these defendants upon the same cause of action. That suit was revived in the name of his executrix, and dismissed without prejudice eight. days after the present suit was filed. Section 22 of the civil code gives a plaintiff whose action fails otherwise than upon the merits one year after such failure to commence a new action. Plaintiff's contention is that she commenced the present suit in anticipation of the failure of the former. We see no good reason why this may not be done. It seems to accord with the spirit and intention of the statute under which she might have

brought the second suit eight days later. If the bringing of it before the dismissal of the former be regarded as premature, the conditions as they existed from and after the failure of the other suit permitted her to maintain it and to appropriate the benefits of section 22.

But if the present suit be regarded as an independent action it is not barred because it was brought within three years from the return of the execution against the coal company. The right to maintain an action against the stockholder upon the judgment accrued upon the return of the execution unsatisfied, provided, of course, the issuance of the execution was not delayed for an unreasonable time. (*A. T. & S. F. Rld. Co. v. Burlingame Township,* 36 Kan. 628, 14 Pac. 271; *Kulp v. Kulp,* 51 Kan. 341, 32 Pac. 1118; *Bank v. King,* 60 Kan. 733, 57 Pac. 952; *Henley v. Myers,* 76 Kan. 736, 93 Pac. 173.)

The execution was issued in less than eight months after the judgment was obtained and the delay cannot be held unreasonable.

Another contention is that the claim, not having been presented for probate and allowed as a claim against the estate, is barred by the limitation provided in the executors' and administrators' act. The statute as it stood prior to 1899 provided a special procedure for enforcing the liability of stockholders for corporate debts. We are not aware of any cases where it has ever been held that a claim of the character sued upon here must be probated. Cases will be found holding that before the estate or an heir or devisee can be held liable upon an unpaid subscription to stock by the decedent the claim must be proved against the estate; but this follows from the nature of the claim, which is upon a direct liability of the decedent the same as upon an unpaid promissory note or account. The plaintiff had no claim provable in the probate court until it was reduced to a judgment against the estate. All plaintiff had was a judgment against the coal company. Now the probate

court could not allow it as a demand against the estate until the right to collect it from the estate had been determined in an action brought by the judgment creditor in some court of competent jurisdiction under the provisions of the statute which authorized the creditor to maintain such action.

Nor is the petition subject to demurrer on the ground that it fails to show service of summons on the coal company in the original action. The presumption is, in the absence of anything to the contrary, that the court and its officers proceeded regularly. None of the other grounds urged in support of the ruling is of sufficient importance to require comment.

The judgment is reversed and the cause remanded with directions to overrule the demurrers.